**ALLEGHENY LUDLUM CORPORATION,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (HOLMES),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 18, 2009.
Decided April 22, 2010.
Reargument Denied June 14, 2010.
Publication Ordered July 9, 2010.

Carl J. Smith, Jr., Washington, for petitioner.

Clark A. Mitchell, Washington, for respondent.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Allegheny Ludlum Corporation (Employer) petitions for review of the order of the Workers' Compensation Appeal Board (Board), which affirmed the order of the Workers' Compensation Judge (WCJ). The WCJ's order granted the Claim Petition of Norma L. Holmes (Claimant). Employer argues that: (1) the WCJ's determination that Claimant gave timely notice of her injury to Employer is not supported by substantial evidence; (2) the medical evidence relied upon by the WCJ in granting the Claim Petition does not constitute substantial evidence; and (3) the WCJ failed to issue a reasoned decision.

Claimant began working for Employer's predecessor, Jessop Steel, on October 7, 1991. Claimant continued working for Employer until June 10, 2003. Claimant's usual position was "as a stretcher-leveler operator which involves running a machine to stretch and flatten steel plates." (WCJ Decision, Findings of Fact (FOF) ¶ 3(d).) Claimant walked approximately three miles a day in this position and "was required to wear metatarsal work boots" that "had steel that went all the way up the foot to above the ankle." (FOF ¶ 3(e).) The metatarsal work boot made it difficult for Claimant to bend her foot, particularly when she had "to bend down to look at gauges." (FOF ¶ 3(e).)

In 1994, while working for Employer, Claimant began experiencing a burning sensation between the third and fourth toes of her left foot "and felt a popping sensation when she put her foot down." (FOF ¶ 3(g).) Claimant would also sometimes feel pain shooting up into her leg. Claimant's symptoms improved when she was off her feet, but worsened when she returned to work and wore the metatarsal boot. Claimant underwent surgery on her left foot on March 6, 1995, and she "was off work for several months after the surgery and received sickness and accident benefits from [E]mployer. She then returned to her pre-injury job." (FOF ¶ 3(h).) Claimant's symptoms recurred in 1997 and "would progressively worsen as the workweek went on." (FOF ¶ 3(i).) Claimant underwent a second surgery "on January 30, 1998, for a Morton's neuroma," a compression of a nerve under the ball of the foot. (FOF ¶ 3(k).)[1] "Claimant again missed several months of work and was paid sickness and accident benefits. She again returned to her regular job." (FOF ¶ 3(k).)

Claimant's symptoms again recurred in late 2002 and worsened toward the beginning of 2003. Claimant left work with Employer on June 10, 2003, and she underwent surgery on her left foot on June 11, 2003. Claimant's symptoms have not improved, and she has not returned to work. Claimant notified Employer of her injury on February 17, 2004. Claimant filed her Claim Petition on December 9, 2004 alleging a work-related injury of a "Morton's Neuroma of the left [foot]" with an injury date of June 10, 2003. (Claim Petition ¶ 1, R.R. at 3a.) Employer denied that Claimant sustained a work-related injury and argued that Claimant's claim was

---

1. We note that, while Claimant underwent surgeries on her feet for Morton's neuromas prior to 2003, Claimant did not file any claim petitions regarding these surgeries.

"barred by the failure to give timely notice" and "barred by the three year[ ] statute of limitation[s]." (Defendant's Answer to Claim Petition at 2, R.R. at 7a.)

Seven hearings were held before the WCJ between March 8, 2005 and November 7, 2006.

David M. Welker, M.D., testified on behalf of Claimant, that he: diagnosed Claimant with Morton's neuroma in her left foot; referred Claimant to A. Lee Dellon, M.D., for surgery in 2004; and performed surgery on Claimant himself in 2005. Dr. Welker opined that Claimant's condition was caused by walking on uneven surfaces in Employer's workplace and that her condition most likely recurred because she "kept going back to the same job and kept having the same repetitive trauma at work." (FOF ¶ 4(l).) Dr. Welker testified that the treatment Claimant had received from her other treating physicians was reasonable and necessary.

Armando Avolio, M.D., testified on behalf of Claimant that he first saw Claimant in 1994, at which time Claimant "complained of pain in the ball of her foot that shot up the leg and . . . was aggravated by work." (FOF ¶ 5(a).) When Claimant's pain recurred after Dr. Avolio administered injections, he performed surgery on Claimant's left foot in March 1995. Because Claimant continued to experience pain, Dr. Avolio performed a second surgery in April 1996. Claimant again presented to Dr. Avolio complaining of pain in the ball of her foot in 2003. At that time, Dr. Avolio referred Claimant to Dr. Conti. Dr. Avolio opined that Claimant's condition was caused by her work, specifically wearing restrictive footwear and walking on uneven surfaces.

Cynthia B. Hatfield, D.P.M., testified on Claimant's behalf that she "first saw [C]laimant on April 1, 2003." (FOF ¶ 6(a).) Dr. Hatfield treated Claimant for

a true neuroma resulting from Claimant's prior surgeries. Dr. Hatfield performed surgery on Claimant on June 11, 2003. On August 15, 2003, Dr. Hatfield "sent a note to [E]mployer . . . stating that [C]laimant will have to change her shoe type for work and that she would have to go into something like a wider tennis shoe or she would not be able to tolerate any type of work." (FOF ¶ 6(e).) Dr. Hatfield opined that Claimant's condition was aggravated by wearing the metatarsal boot and "walking on concrete all day and climbing ladder[s] or steps." (FOF ¶ 6(g).) Dr. Hatfield also opined that Claimant could not return to her pre-injury position.

Employer presented the testimony of Stephen F. Conti, M.D., that he "first saw [C]laimant on October 10, 2003" when she was referred to him by Dr. Avolio. (FOF ¶ 7(b).) Dr. Conti performed surgery on Claimant's left foot on December 15, 2003. On June 22, 2004, when Dr. Conti last saw Claimant, her symptoms had improved, although she still had some pain. Dr. Conti opined that Claimant's condition was not caused by her metatarsal boot.

Employer also offered the testimony of Jeffrey N. Kann, M.D. "Dr. Kann examined [C]laimant on June 23, 2005." (FOF ¶ 8(b).) "Dr. Kann opined that the surgery performed by Dr. Welker on January 26, 2005, did not have any connection to the Morton's neuroma problem that [C]laimant had been complaining about and for which she had undergone surgery." (FOF ¶ 8(d).) Dr. Kann opined that Claimant's Morton's neuroma was not caused by her employment with Employer. Dr. Kann disagreed that the metatarsal boot or walking on uneven surfaces caused Claimant's condition.

After considering the evidence presented, the WCJ credited Claimant's experts over Employer's experts. The WCJ made

this credibility determination largely on the basis of "[C]laimant's credible testimony that wearing the metatarsal boot at work caused her left foot to become symptomatic." (FOF ¶ 14.) The WCJ determined that Claimant carried her burden of proving that she sustained a work-related injury in the form of a recurring Morton's neuroma in her left foot. The WCJ also held that Claimant satisfied "her burden of proving that she gave notice of her injury to [E]mployer within 120 days of when she should reasonably have known of the relationship between her left foot condition and her employment" and that "[t]here is no evidence of record which would establish that claimant was aware of a medical opinion connecting her left foot condition and her employment prior to the date that she filed the [C]laim [P]etition." (WCJ Decision, Conclusion of Law (COL) ¶ 3.) The WCJ granted the Claim Petition effective June 10, 2003. Employer appealed to the Board.

Before the Board, Employer argued, *inter alia*, that the WCJ erred in determining that: Claimant timely notified Employer; the WCJ's decision was not otherwise supported by substantial evidence; and the WCJ's decision was not reasoned. The Board disagreed and held that there was substantial evidence to support the WCJ's finding that Claimant gave notice to Employer within 120 days of when she should have known of her injury. The Board also summarily disposed of Employer's arguments that the remainder of the WCJ's findings were not supported by substantial evidence and that the WCJ's decision was not reasoned. Employer now petitions

this Court for review, making the same arguments that it made before the Board.[2]

 We first address Employer's argument that the WCJ's determination that Claimant gave Employer timely notice of her injury is in error and not supported by substantial evidence. Section 311 of the Workers' Compensation Act[3] provides that, generally, an employer will not be obligated to pay workers' compensation benefits unless a claimant or his representative gives notice of the work-related injury to the employer within 120 days of the occurrence of the injury. 77 P.S. § 631.

> However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, *or by the exercise of reasonable diligence should know,* of the existence of the injury and its possible relationship to his employment.

*Id.* (emphasis added). A claimant has the burden of proving that she satisfied the requirements of Section 311. *See U.S. Airways v. Workers' Compensation Appeal Board (Panyko),* 779 A.2d 1233, 1237 (Pa.Cmwlth.2001) ("The claimant has the burden of establishing that the employer was given notice of the injury"). "Whether a claimant has complied with the notice requirements of [Section 311] is a question of fact for the WCJ." *Id.* As always, such a finding must be supported by substantial evidence. *Sell v. Workers' Compensation Appeal Board (LNP Eng'g),* 565 Pa. 114, 122, 771 A.2d 1246, 1250 (2001). However, the "reasonable diligence" mentioned in

---

2. This Court's review of the Board's order "is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed."

*World Kitchen, Inc. v. Workers' Compensation Appeal Board (Rideout),* 981 A.2d 342, 346 n. 5 (Pa.Cmwlth.2009).

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 631.

Section 311 "is an objective, rather than a subjective standard." *Sell* at 124, 771 A.2d at 1251. The elements of knowledge a claimant must possess in order to trigger the running of the notice period are: "(1) knowledge or constructive knowledge (2) of disability (3) which exists, (4) which results from an occupational disease [or injury], and (5) which has a possible relationship to the employment." *Consolidation Coal Co. v. Workmen's Compensation Appeal Board (Mountain)*, 47 Pa.Cmwlth. 64, 407 A.2d 134, 137 (1979); *see also Bailey v. Workmen's Compensation Appeal Board (Pittsburgh Tube Co.)*, 96 Pa. Cmwlth. 599, 508 A.2d 393, 395 (1986) (stating that the elements set out in *Consolidation Coal* apply equally to injury cases and are not limited to occupational disease claims).

In this case, the WCJ found that Claimant "gave notice of her injury to [E]mployer within 120 days of when she should reasonably have known that her left foot condition was related to her employment." (FOF ¶ 16.) Employer argues that this finding is not supported by substantial evidence. Additionally, Employer asserts that the WCJ erroneously concluded that "[t]here is no evidence of record which would establish that claimant was aware of a medical opinion connecting her left foot condition and her employment prior to the date that she filed her claim petition." (Employer's Br. at 9 (quoting COL ¶ 3).) We agree.

Initially, we note that the WCJ's statement in Conclusion of Law 3 that Claimant did not have a medical opinion connecting her injury to her work before she filed her Claim Petition is clearly erroneous. The record contains a letter from Dr. Dellon to Claimant dated November 14, 2004, a month before the date of the Claim Peti-

tion, in which Dr. Dellon opines that Claimant's working conditions caused her injury. (Letter from Dr. Dellon to Claimant (November 14, 2004), Welker Dep Ex. 3., R.R. at 144a.) Thus, there *is* evidence of record establishing that Claimant was aware of a medical opinion connecting her work injury to her work prior to the time she filed her Claim Petition, contrary to the WCJ's statement in Conclusion of Law 3.

■ Claimant stated that she "never made the connection" between her symptoms and wearing the metatarsal boot and walking on concrete surfaces at her workplace. (WCJ Hr'g Tr. at 41, R.R. at 62a.) However, the parties agree that Claimant gave notice to Employer by a letter from Claimant's counsel dated February 17, 2004. (Employer's Br. at 7; Claimant's Br. at 2.) Logically, in order to give notice to Employer, Claimant must have known of the possible connection between her injury and her work for Employer; one can not give notice of what one does not know. Where a claimant alleges a cumulative trauma injury caused by the claimant's working conditions, the 120-day period begins to run on the last day of aggravation, which will normally be the last day of work. *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 578 Pa. 207, 223, 851 A.2d 838, 847–48 (2004). In this case, Claimant's last day of work was June 10, 2003. The only evidence in the record indicating how Claimant might have become aware of the possible connection between her work and her injury after June 10, 2003, but before February 17, 2004, is Claimant's statement that her treating podiatrist, Dr. Hatfield, told her in June 2003 that she "need[ed] to get another job." (WCJ Hr'g Tr. at 27, R.R. at 59a.) [4] Claimant has provided no

4. We note that Claimant did undergo surgery by Dr. Conti in December of 2003. We do

other evidence as to when she knew or should have known of the possible connection between her work and her injury prior to the time she gave notice to Employer. Thus, Claimant failed to carry her burden under Section 311 and the WCJ's Conclusion of Law 3, that Claimant gave notice to Employer within 120 days of the date she knew or should have known of the possible connection between her injury and her work, is in error, as is the WCJ's statement in Conclusion of Law 3 that there is no evidence that Claimant had a medical opinion connecting her injury to her work before she filed her Claim Petition.

Moreover, there is substantial evidence in the record to indicate that a person in Claimant's position, exercising reasonable diligence, should have known of a possible connection between Claimant's injury and her work. Claimant explicitly acknowledged that her pain was worse at work than at home and that she noticed a connection between wearing the metatarsal boot and her symptoms:

Q. You knew that if you were not walking on concrete and not wearing that metatarsal boot, your symptoms got better?

A. Yes.

Q. Did you only have the symptoms when you were at work?

A. Until right before I had to have the surgeries again, and then nothing helped it.

Q. So you had the symptoms at work when you were walking on concrete when you were wearing the boots?

A. Yes.

Q. And you knew that the symptoms got worse as the work week went on?

A. Yes.

Q. And you knew the symptoms got better when you were away from work?

A. Yes.

Q. And you knew that each time after you had the surgery and you came back to work, it was your testimony that eventually the symptoms came back and they came back at work?

A. Yes.

Q. And they got progressively worse at work?

A. Yes

(WCJ Hr'g Tr. at 41–42, R.R. at 62a–63a.) Furthermore, Dr. Avolio testified that he examined Claimant in 1994 and that, at that time, Claimant told Dr. Avolio that her pain was aggravated by her work. (Avolio Dep. at 6–7, R.R. at 153a–54a.) Based on this credited testimony, Claimant, exercising reasonable diligence, should have been aware of a possible connection between her work-related injury and her employment while she was still working for Employer. Thus, the 120–day period within which she had to notify Employer for purposes of Section 311 would have begun to run on her last day of work, June 10, 2003.

Claimant, relying on *Sell*, argues that, although she may have suspected a connection between her injury and her work, she should not be charged with knowledge of that injury for purposes of Section 311 until she had received an expert medical opinion relating her injury to her work, which she did not receive until after she had filed her Claim Petition and after she gave notice of her injury to Employer. We do not believe that *Sell* stands for the broad proposition that a claimant may not be charged with knowledge of the connection between an injury and the claimant's

not believe, however, that one could reasonably infer that Dr. Conti informed Claimant of a connection between her injury and her

work since Dr. Conti testified that no such connection existed.

work until the claimant receives an expert medical opinion. In addition, *Sell* is readily distinguishable from the situation presented in this case.

In *Sell*, the claimant (Sell) was a smoker who suffered from tightness in her chest, sore throat, coughing, and a runny nose. *Sell*, 565 Pa. at 117, 771 A.2d at 1247. Sell worked with formaldehyde as part of her job, and she suspected that the chemicals she worked with might be causing some of her symptoms. *Id.* at 117–18, 771 A.2d at 1247–48. Eventually, Sell was diagnosed with and hospitalized for emphysema, the cause of which was never discussed. *Id.* at 118, 771 A.2d at 1248. Following her hospitalization Sell did not return to work, but began looking "for a physician with knowledge of the chemicals and dust in her work environment," whom she did not find until almost nine months after she left work. *Id.* That physician, Dr. Cohn, told Sell she could return to work if she was careful with regard to her exposure to formaldehyde, and Sell then informed her employer of this limitation and how formaldehyde had affected her health. *Id.* The Supreme Court held that Sell could not be charged with knowledge of her work-related injury until she received Dr. Cohn's opinion that her emphysema was aggravated by her exposure to formaldehyde. *Id.* at 126–27, 771 A.2d at 1253. In reaching this holding, the Supreme Court stated that:

> Employees who suffer an injury that is not readily and immediately ascertainable have the same rights under the Act as those employees who sustain an injury that is, as long as they proceed with reasonable diligence.... We have stated that "reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case," and have emphasized that even though reasonable diligence is an objective, rather than a subjective standard, it is sufficiently

flexible to take into account the different capacities people have to deal with the circumstances they confront.

*Id.* at 123–24, 771 A.2d at 1251 (citations omitted). The Supreme Court also stated that Section 311's discovery rule "calls for more than an employee's suspicion, intuition or belief; by its terms, the statute's notice period is triggered only by an employee's *knowledge that she is injured* and that her injury is *possibly* related to her job." *Sell*, 565 Pa. at 126, 771 A.2d at 1253 (emphasis added).

In *Sell*, Sell gave notice to her employer after she obtained a medical opinion connecting her emphysema to her exposure to formaldehyde at her work. Here, Claimant gave notice to Employer in February 2004, six months before she obtained a medical opinion connecting her injury with her work. Claimant must have known of such a connection at least as of the time she gave notice. The question then becomes when Claimant became aware of the possible connection. As discussed above, Claimant presented no evidence as to when she became aware of the connection such that the WCJ could make a factual determination that notice was given within 120 days of when Claimant knew of the connection. Sell, on the other hand, presented evidence as to when she first knew of the connection, and it was then possible to determine that she gave notice within 120 days of gaining that knowledge.

Also, unlike in *Sell*, Claimant here clearly knew she had a left foot injury, as she had been treated for her Morton's neuroma and its sequelae since 1994. As the credited evidence cited above indicates, Claimant noticed a connection between that left foot injury and her work duties as early as 1994. There is no indication in Sell that Sell noticed that her symptoms were worse while she was at work, but

better while she was away. Given the undisputed length of Claimant's treatment, the opinions of Claimant's treating doctors, Dr. Avolio and Dr. Hatfield, that Claimant's condition was caused by her work, and Claimant's association of her symptoms with her work, it is impossible to say that Claimant exercised reasonable diligence to discover whether there was a causal connection between her work duties and her injury. Additionally, unlike the claimant in Sell, who could not find a physician who could connect the aggravation of her emphysema to her exposure to chemicals at work until nine months after she left her employment, Claimant relies upon a physician with whom she was treating since 1994 to establish that her working conditions caused her Morton's neuroma. Finally, we note that despite Claimant's assertion that she did not receive a medical opinion connecting her Morton's neuroma with her work until after she filed her Claim Petition, Claimant acknowledged that Dr. Hatfield told her in June of 2003 that she "need[ed] to get another job." (WCJ Hr'g Tr. at 27, R.R. at 59a.)

For these reasons, we hold that the WCJ's finding that Claimant "gave notice of her injury to employer within 120 days of when she should reasonably have known that her left foot condition was related to her employment" is not supported by substantial evidence in the record and, thus, Claimant failed to adduce sufficient evidence to show that she complied with the requirements of Section 311. Therefore, the rule articulated by the Supreme Court in *Williams* applies and the 120–day notice period began to run on Claimant's last day of work, June 10, 2003. Because Claimant did not give notice to Employer until February 17, 2004, the notice was untimely, and she is barred from receiving benefits

pursuant to Section 311.[5] We, therefore, reverse the order of the Board.

### ORDER

**NOW,** April 22, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **REVERSED.**

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. The law regarding the requirement for medical evidence of record proving Claimant's awareness of the work-relatedness of her injury in this matter is clear, and the record herein, as well as the WCJ's credibility determinations, control. The Majority relies upon evidence not expressly found credible by the WCJ, draws a conclusion therefrom in contradiction to the credibility determinations of the WCJ, and extracts inferences from the evidence that are adverse to Claimant, the prevailing party before the WCJ and the Board.

The Majority's citation to evidence of record that the Majority concludes establishes Claimant's awareness of a medical opinion connecting her injury to her work prior to the filing of her Claim Petition relies upon evidence that was not expressly found credible by the WCJ. In determining whether substantial evidence supports a WCJ's finding of fact, it is irrelevant that the record reveals evidence that would support a contrary finding; the relevant inquiry is whether the record contains substantial evidence supporting the actual findings that were made. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations, Inc.),* 70 Pa.Cmwlth. 542, 453 A.2d 710 (1982). The Majority's reliance upon this evidence of record ignores the foundational

---

5. Due to our holding on this issue, we do not reach Employer's remaining arguments.

axiom that the WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). The Majority's reliance upon its cited evidence of record usurps the WCJ's fact-finding role, and contradicts the WCJ's express credibility determinations regarding Claimant's testimony in relation to her awareness of the work-relatedness of her injury.

*Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 565 Pa. 114, 771 A.2d 1246 (2001), clearly establishes that a claimant cannot be charged with knowledge of the work-relatedness of an injury in the absence of expert medical opinion recognizing that nexus and so informing the claimant, for purposes of employer notice under Section 311 of the Workers' Compensation Act (Act).[1] While Sell is factually distinguishable from the facts *sub judice* in some respects, its control under the instant facts is beyond dispute given the WCJ's credibility determinations.

The Majority, in distinguishing *Sell*, relies on the "reasonable diligence" exception to the medical evidence requirement stated within Section 311, and recognized in *Sell*. However, the Supreme Court in

*Sell* was also reviewing a reversal of a WCJ's findings when it considered—and rejected—the reasonable diligence exception, in light of the WCJ's crediting of the claimant's testimony regarding her lack of knowledge of the work-relatedness of her injury prior to medical opinion confirmation. Within that specific context, the Supreme Court emphasized that Section 311 "calls for more than an employee's suspicion, intuition or belief," notwithstanding the objective nature of the determination of the reasonable diligence due on the part of a claimant. *Sell*, 565 Pa. at 126, 771 A.2d at 1253.

In usurping the WCJ's credibility determinations in this matter, the Majority extracts an assumption that Claimant should have known of the work-relatedness of her injury. However, and dispositively, an equally plausible assumption exists that Claimant's "suspicions, intuitions, or beliefs" were contradicted by her employment of reasonable diligence. As the Majority recognizes,[2] Claimant met with several medical experts prior to being directly told that her injury was work-related. The fact that Claimant received no medical opinion of work-relatedness from any of those prior diagnoses leads to an equally (or more) valid assumption that Claimant relied on the absence of a medically diagnosed nexus in discounting any intuition on her part that her injury was work-related.[3] Thus, even with the assumption charged to Claimant in terms of the due diligence owed as assigned by the Majority, it was eminently reasonable for

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

2. The Majority's recitation of multiple medical opinions finding a work-related cause for Claimant's injury is irrelevant to the issue of employer notice; those opinions are bereft of any record testimony that Claimant was *informed* of that work-relatedness within a time

frame that would render her notice to Employer untimely under the Act.

3. I note that the record establishes that Claimant had two prior foot injuries of an apparently similar medical nature, neither of which was found to be a compensable injury under the Act. WCJ Opinion at 1–2.

Claimant to disregard any such assumption given the undisputed medical evidence of record. As a reviewing Court, we are constrained to read the evidence of record in a light most favorable to Claimant as the prevailing party below, including the granting of the benefit of all inferences reasonably drawn therefrom. *Sell* (citation omitted). Given the credibility accorded to Claimant's testimony by the WCJ, the Majority's extraction of an inference adverse to Claimant's express testimony is error.

In *Sell*, the Supreme Court found the claimant to have exercised reasonable diligence in seeking medical knowledge and opinion in trying to determine the cause of her disability; therein, that diligence resulted in expert opinion as to the work-relatedness. Claimant here equally exercised reasonable diligence in seeking medical diagnoses of her injury, even assuming *arguendo* the Majority's reliance upon what Claimant should have intuited about the injury given her prior medical history. However, unlike the claimant in *Sell*, no such causal nexus was presented to Claimant in this matter in her initial medical diagnoses. The Majority's analysis on this issue appears to conflate the expert medical testimony on when the doctors in this matter may have been aware of the work-relatedness of Claimant's injury, with the crucial dispositive issue of when Claimant herself was aware of any such medical opinion of work-relatedness. I note again that the WCJ found Claimant to be credible[4] on the issue of Claimant's notice to Employer of her injury in a timely fashion once she was medically informed of the causal nexus with her work.

The entirety of the Majority's analysis in this matter relies upon inferences drawn from the evidence of record, which inferences the Majority extracts as adverse to Claimant. As noted above, this Court must view the evidence in the light most favorable to the party that prevailed before the WCJ, and must draw all reasonable inferences from the evidence in support of the WCJ's decision. *Sell; Bentley v. Workers' Compensation Appeal Board (Pittsburgh Board of Education)*, 987 A.2d 1223 (Pa.Cmwlth.2009).

To the extent that any inferences may be drawn from the testimony of record herein, those inferences must as a matter of law favor Claimant as the prevailing party. *Sell; Bentley*. Those favorable inferences are bolstered by the WCJ's credibility determinations herein. Additionally, those favorable inferences are equally applicable to the issue of Claimant's exercise of reasonable diligence in seeking medical knowledge and opinion in trying to determine the cause of her disability, on the issue of her actual knowledge thereof (notwithstanding the knowledge of work-relatedness by the medical experts herein), and on the issue of her timely notice to Employer. *Id.* To the extent that disposition of this case is precluded by the WCJ's failure to expressly note in his findings the precise date that Claimant became aware of the work-relatedness of her injury, I would remand for such a finding on that single narrow issue, in order to enable effective appellate review.

---

4. Our appellate role in worker's compensation cases is not to reweigh the evidence or review the credibility of witnesses, but merely to determine whether the WCJ's findings have the requisite measure of support in the record. *Sell* (citation omitted).