IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizy Thomas,                              :
                    Petitioner            :
                                          :   No. 730 C.D. 2020
            v.                            :
                                          :   Submitted:  January 15, 2021
Workers' Compensation Appeal             :
Board (Trustees of the University         :
of Pennsylvania),                         :
                    Respondent            :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge[2]


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  January 18, 2022


         Lizy Thomas (Claimant) petitions for review from the July 8, 2020 decision and order of the Workers' Compensation Appeal Board (Board).  The Board affirmed the May 30, 2019 decision of the Workers' Compensation Judge (WCJ), who dismissed Claimant's claim petition for failing to inform the Trustees of the University of Pennsylvania (Employer) of the existence of a work-related injury within the statutorily prescribed 120-day notice period.  Upon review, we affirm the Board's order.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

[2] The Court reached the decision in this case prior to the conclusion of Judge Crompton's service on the Commonwealth Court.

## I. Factual & Procedural History

On April 23, 2018, Claimant filed a claim petition asserting that she aggravated an "underlying degenerative disc disease causing cervical radiculopathy and lumbar radiculopathy." (Reproduced Record (R.R.) at 1a-2a.) Claimant asserted that the injury occurred while she was working for her employer for 15 years as a nurse. *Id.* As a result of her injury, Claimant stopped working on September 20, 2017. *Id.* at 3a.

During her deposition, Claimant provided testimony that her work consisted of "total patient care"; she pushed, pulled, lifted, and carried patients. *Id.* at 55a-56a. Additionally, Claimant wore a heavy lead apron constantly at work for 10 hours a day as she worked in the interventional radiology department. *Id.* Claimant testified that in October 2010, she had a low back injury and received workers' compensation for seven months. *Id.* at 58a. Following that injury, however, Claimant returned to full-time employment until September 19, 2017, when she began to have pain for the injury at issue here. *Id.* at 58a-59a. Claimant then testified that in September 2017, she had pain "radiating to [her] right arm [and] right shoulder, [] and to the fingers with tingling numbness" she was experiencing "on and off. . . ." *Id.* at 59a. On the night of September 19, 2017, Claimant experienced "excruciating pain throughout the night," and she could not sleep even with the aid of pain medication and ibuprofen. *Id.* The following morning, Claimant called her manager and called off work. *Id.* Claimant testified that she had issues completing her work duties of pushing, pulling, lifting, and carrying patients due to "pain and restricted movement" she experienced. *Id.* at 60a.

Following Claimant's conversation with her supervisor, Claimant's supervisor did not instruct her to fill out a form for an injury. *Id.* at 69a. Instead,

Claimant's supervisor advised Claimant to apply for family leave under the Family and Medical Leave Act (FMLA),[3] and Claimant used her sick leave, personal time, and vacation time during this initial period in 2017 running from September 20 through November 1. *Id.* at 69a, 71a. After Claimant took her FMLA leave, she received short-term disability benefits that lasted 26 weeks, which were through Penn Hospital. *Id.* at 69a-70a. Following short-term disability coverage, Claimant's coverage converted into long-term disability coverage through Penn Hospital's carrier. *Id.* at 70a.

Claimant consulted her primary care doctor following this pain, who referred Claimant to an orthopedic sports medicine doctor, Dr. Liebman. *Id.* Dr. Liebman prescribed Claimant pain medication, ibuprofen, and steroids, and referred Claimant to Dr. Neil Malhorta. *Id.* at 62a. Dr. Malhorta reviewed Claimant's magnetic resonance imaging (MRI) results, and he informed Claimant that she did not need surgery, but he suggested continuing with the steroids, and he referred her to a neurologist and a pain management doctor, Dr. Purewal. *Id.* at 62a-63a. Claimant visited Dr. Purewal on February 20, 2018, and he informed Claimant that her injury symptoms resulted from repeated work-related wear and tear. *Id.* at 63a, 66a. At the hearing before the WCJ, the WCJ asked Claimant, "in terms of when you understood that you may have a work[-]related injury[,] was that after your conversation with Dr. Purewal?" *Id.* at 41a. Claimant responded, "[y]es, sir." *Id.*

Claimant then was asked during her deposition: "When did you first think that these symptoms were related to your job?" *Id.* at 78a. Claimant responded, after Dr. Liebman saw the MRI and told her that she "cannot wear that heavy lead anymore," the lead apron Claimant wore in the procedure room, and that she could not work. *Id.*

---

[3] 29 U.S.C. §§ 2601, 2611-2620, 2631-2636, 2651-2654.

at 78a-79a. Claimant believed Dr. Liebman told her this recommendation on September 28, 2017. *Id.* at 79a.

On May 30, 2019, the WCJ issued his decision to deny Claimant benefits due to her failure to inform Employer of the existence of a work-related incident within 120 days of September 28, 2017. *Id.* at 18a-19a. The WCJ relied upon sections 311 and 312 of the Workers' Compensation Act (Act),[4] *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246 (Pa. 2001), and *Alleghany Ludlum Corp. v. Workers' Compensation Appeal Board (Holmes)*, 998 A.2d 1030 (Pa. Cmwlth. 2010), in determining that Claimant had 120 days to provide notice to Employer from the date Claimant learned that certain work activities caused her pain and that she could not perform her work. *Id.* at 16a-17a. The 120-day notice period started from either Claimant's September 19, 2017 realization that because of her injury she could no longer perform her tasks herself or when Dr. Liebman informed her on September 28, 2017, that she could not wear the heavy lead apron that she needed to wear to perform her work tasks. *Id.* at 17a.

The Board affirmed the WCJ's decision on appeal.[5] *Id.* at 32a. Similar to the WCJ, the Board reasoned that section 311 required Claimant to file an incident report or inform Employer within 120 days of her September 28, 2017 meeting with Dr. Liebman. *Id.* at 31a. Claimant now appeals to this Court.

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 631-632 (Act).

[5] The Board also determined that Employer had an adequate excuse for the untimely filing of its answer. (R.R. at 30a.)

## II.    Parties' Arguments

Claimant argues that she did not know her injury was work-related until her February 20, 2018 meeting with Dr. Purewal, and that, her April 23, 2018 claim petition was timely. (Pet'r's Br. 15.)  Claimant contends that *Alleghany Ludlum Corp.* is distinguishable because, here, Claimant did not provide explicit testimony confirming that she knew her injured condition was work-related.  *Id.* at 20.  Rather, Claimant argues her injury status was "a sudden and inexplicable onset of symptoms . . . resulting in her decision to stop working as of September 20, 2017, in order to seek medical treatment."  *Id.*  Additionally, Claimant argues, "[e]ven if [she] arguably suspected that her condition was work-related, when she stopped working on September 20, 2017, the decisional case law is clear that mere suspicion, intuition or belief is not enough to trigger the discovery rule in [s]ection 311."  *Id.* at 21.  Claimant argues that *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi)*, 78 A.3d 1233 (Pa. Cmwlth. 2013), and *Sell* aid her case in that she "promptly exercised reasonable due diligence to determine the cause of her symptoms," unlike the claimant in *Alleghany Ludlum Corp.*  (Pet'r's Br. 22.)  Claimant states that this Court determined in *A & J Builders, Inc.* that a "'claimant may have suspected a possible relationship between his knee condition and employment, [but the claimant] did not possess the requisite knowledge until' [the claimant] received [a] diagnosis that [his] condition was work[-]related."  (Pet'r's Br. 21-22) (quoting *A&J Builders, Inc.*).

Employer argues that substantial evidence supports the WCJ's conclusion that Claimant did not provide timely notice.  (Resp't's Br. 8.)  Employer argues that by September 2017, Claimant knew her work duties caused her injury and pain, and that she could no longer perform her work tasks.  *Id.* at 8-9.  Employer argues that Dr.

5

Liebman made it clear to Claimant in September 2017 the cause of her injury, as evidenced by her own admission in her deposition. *Id.* at 9.

### III. Discussion

On appeal,[6] the issue we must decide is whether the Board erred in affirming the WCJ's determination that Claimant failed to inform Employer of the existence of a work-related injury within the statutorily prescribed 120-day notice period. "The claimant bears the burden of establishing [s]he gave the employer timely notice of the injury. The question of the timeliness of that notice is generally one of fact." *A & J Builders, Inc.*, 78 A.3d at 1239 (citations omitted). Therefore, when a WCJ finds "a claimant gave an employer timely notice, we must determine whether substantial evidence supports that finding." *Id.* "Section 311 provides that an employee has 120 days from the date of the injury, or from the date [that] the employee learns the injury is work-related, to provide notice to the employer of the work-related injury." *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 (Pa. 2011). Specifically, the statute reads, in relevant part, as follows:

> unless [] notice [is] given within [120] days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. []

---

[6] "Our standard of review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997).

6

77 P.S. §631. "The elements of knowledge a claimant must possess in order to trigger the running of the notice period are: (1) knowledge or constructive knowledge (2) of [a] disability (3) which exists, (4) which results from an occupational disease or injury, and (5) which has a possible relationship to the employment." *Alleghany Ludlum Corp.*, 998 A.2d at 1034 (internal brackets and quotations omitted).

Claimant argues that *A & J Builders, Inc.* and *Sell* support her case. (Pet'r's Br. 22.) However, *A & J Builders, Inc.* and *Sell* are distinguishable from Claimant's case. In *A & J Builders, Inc.*, a carpenter, the claimant, filed a notice of injury with his previous employers, one of which was A & J Builders, after consulting with his doctor on March 31, 2009. *A & J Builders, Inc.*, 78 A.3d at 1236-37. For the first time, the claimant's doctor confirmed the claimant's injury came from his work as a carpenter. *Id.* The claimant filed a claim petition on July 10, 2009, even though his last day of work for A & J Builders was in September 2007. *Id.* at 1236. The WCJ credited the claimant's physician's testimony and found that the claimant's work as a carpenter caused the injury. *Id.* at 1238. A & J Builders argued that the "[c]laimant knew or should have known that his right knee condition was related to work as early as 2006 while working for A & J Builders[, and the c]laimant acknowledged his work duties for A & J [Builders] caused his right knee pain to return." *Id.* at 1239. Therefore, A & J Builders argued that the claimant filed untimely notice beyond 120 days. *Id.* This Court disagreed with A & J Builders' assertion, and we held that the claimant provided timely notice to his employer of his work-related injury. *Id.* at 1242.

This Court determined that the WCJ concluded that the claimant was "[un]sure whether there was a relationship between his work duties and his knee pain until his [p]hysician informed him of the causal connection on March 31, 2009." *Id.* at 1241. This Court reasoned that the WCJ's "findings [we]re supported by the credible

7

testimony offered by [the c]laimant and his [p]hysician. [The c]laimant repeatedly testified he did not know for sure there was a relationship between his work duties and knee pain until his [p]hysician first informed him of such on March 31, 2009." *Id.* The claimant's testimony was further supported by his physician. *Id.* Unlike *A & J Builders, Inc.*, where the claimant testified, with corroboration from his physician, that he did not know of the relationship between his injury and his work until a later date that was within the 120-day notice period, Claimant here admitted during her deposition testimony that she first thought her injury stemmed from her work in September 2017. The WCJ credited this admission. *See* R.R. at 13a, 17a-18a. Therefore, Claimant's notification of her work injury was unquestionably well outside of the 120-day notice period. Accordingly, we conclude that *A & J Builders, Inc.* provides no exception or support for Claimant's case, as she failed to provide timely notice.

Claimant also relies upon *Sell* to support her case. (Pet'r's Br. 22.) In *Sell*, the claimant, Sell, worked for a plastic pellet manufacturer in which she "was in daily and direct contact with hot fumes and dust from the processing of a number of chemicals, including formaldehyde." *Sell*, 771 A.2d at 1247. Additionally, Sell smoked a pack of cigarettes every day for 40 years, starting at age 15, but she later reduced that amount to about 10 cigarettes per day. *Id.* "In the 1980[]s, Sell experienced sore throats, coughing, tightness in her chest, and a runny nose, and about once a year, contracted bronchitis." *Id.* Sell noticed that during the days she worked, "her energy level would decrease and respiratory difficulties would increase," but on her off days, she felt better. *Id.* "Sell told her co-workers that she thought that her health problems might be connected to her job, but, lacking proof, she did not share this thought with a supervisor." *Id.* at 1247-48.

8

On November 23, 1992, after going to the hospital because she had difficulty breathing, "Sell's physicians told her that she had emphysema, a chronic obstructive pulmonary disease that interferes with normal breathing. The cause of the emphysema, however, was not discussed." *Id.* at 1248. On November 25, 1992, Sell was released from the hospital, but she did not return to work. *Id.* Sell started searching "for a physician with knowledge of the chemicals and dust in her work environment." *Id.* Sell found a physician, and, on August 31, 1993, the physician "provided Sell with a note that stated that she was able to return to work, but with 'cautious exposure to formaldehyde.'" *Id.* At the same time, Sell gave her physician's note to her employer's head of personnel. *Id.* Sell informed the head of personnel that her injury came from work and how the formaldehyde exposure affected her. *Id.* Sell's physician informed Sell's employer that she could return to work but with a special respirator. *Id.* However, Sell's employer declined to have Sell work within her restriction. *Id.*

When Sell's claim went before a WCJ, the WCJ determined that Sell provided timely notice to her employer of her injury before the August 31, 1993 meeting with her physician. *Id.* at 1249. However, the Board reversed, and determined that Sell should have known the cause of her injury and its relationship to her work in November 1992 when she was hospitalized. *Id.* at 1250. This Court affirmed the decision, and Sell appealed to the Pennsylvania Supreme Court. *Id.* The Supreme Court reversed and reinstated the WCJ's decision in favor of Sell. *Id.* at 1253.

Our Supreme Court reasoned that "Sell's aggravated emphysema was not the result of an accident or some other event of which she would have been immediately aware. Instead, it was the outcome of disease, a slow and silent process." *Id.* at 1252. The emphysema, which stemmed from smoking, progressed over time and was worsened, in increments, because of Sell's workplace environment. *Id.* Thus, the

9

Supreme Court held that the WCJ's conclusion "that without the benefit of medical consultation, Sell neither knew nor should have known, that from among all her respiratory difficulties, there was a compensable injury" was supported by substantial evidence. *Id.* Therefore, "Sell should not have been expected to sort through her many symptoms unassisted and essentially diagnose herself." *Id.*

Here, unlike *Sell*, Claimant did not have to diagnose herself without assistance. Claimant consulted Dr. Liebman, who confirmed to her, by Claimant's own admission, that Claimant's injury came from her work. Although both Claimant and Sell may have had injury complications that arose from a slow and silent process, Claimant had the benefit of medical advice from Dr. Liebman that her work over the years caused her injury. Therefore, *Sell* provides no exception or support for Claimant's case, as she failed to provide timely notice.

As such, the Board properly upheld the WCJ's determination that Claimant did not provide Employer with timely notice. Per section 311, "the [] notice period is triggered [] by an employee's knowledge that she is injured and that her injury is possibly related to her job." *Sell*, 771 A.2d at 1253. During Claimant's deposition, Claimant admitted that after meeting with Dr. Liebman in September 2017, she thought her injury was caused by her work. *See* R.R. at 78a-79a. This admission is sufficient to establish that Claimant possessed the requisite knowledge and discovered the relationship of her injury to her work. There is substantial evidence to conclude that the WCJ was correct in finding that on September 28, 2017, Claimant knew that her injury was related to her work. Based on Claimant's admission during her deposition, the WCJ did not err in determining that it did not take until Claimant's February 2018 meeting with Dr. Purewal for Claimant to discover the relationship between her injury

10

and her work to start the notice period. Claimant had 120 days to inform Employer from late September 2017, not February 2018, to provide timely notice.

Claimant's admission during her deposition that she first thought her injury was work-related in September 2017, after consulting with Dr. Liebman, triggered the 120-day notice period to inform Employer of her work-related injury. Accordingly, the Board did not abuse its discretion in upholding the WCJ's decision that Claimant failed to give Employer timely notice that her injury was work-related.

## IV.    Conclusion

For the foregoing reasons, we affirm the Board's July 8, 2020 order.

_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in this decision.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lizy Thomas,                                  :
                 Petitioner          :
                               :   No. 730 C.D. 2020
            v.                             :
                               :
Workers' Compensation Appeal           :
Board (Trustees of the University      :
of Pennsylvania),                      :
                 Respondent          :

## ***ORDER***

       AND NOW, this 18th day of January, 2022, the July 8, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

                                    _____
                                    PATRICIA A. McCULLOUGH, Judge