**Lawrence LITZINGER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BUILDERS TRANSPORT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 30, 1998.

Decided June 8, 1999.

C153.

Louis S. Walton, Altoona, for petitioner.

Joel M. Kormanski, Altoona, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Lawrence Litzinger (Claimant) appeals from an order of the Workers' Compensation Appeal Board, which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the petition of Builders Transport (Employer) to modify Claimant's benefits.

On or about July 26, 1993, Employer hired Claimant to work as a truck driver and, in that capacity, Claimant transported goods from Employer's Carlisle, Pennsylvania, facility to various interstate locations. When Claimant was driving he would be away from home for three to four days at a time, and he would sleep in a

sleeper unit attached to the cab of his truck.

On August 2, 1993, about one week after he was hired by Employer, Claimant sustained a rotator cuff injury to his right shoulder in the course of his employment. As directed by a WCJ's order circulated on April 12, 1995, Claimant was awarded total disability benefits in the amount of $431.76 per week, based on an average weekly wage of $647.64.

In June of 1995, Claimant's physician, Dr. Litton, and a doctor retained by Employer, Dr. Perry Eagle, each concluded that Claimant was able to return to sedentary work. Both doctors determined, among other things, that Claimant could drive only one to three hours during an eight-hour workday.

By letter dated July 26, 1995, Employer's job developer, Comprehensive Rehabilitation Associates (CRA), notified Claimant that Employer was offering Claimant a full-time sedentary position as a clerical assistant. The position was located at Employer's terminal in Carlisle, Pennsylvania, and would pay Claimant $5.00 per hour. Claimant's work hours would be Monday through Friday, noon through 8:00 p.m. Because Claimant resides in Altoona, Pennsylvania,[1] which is approximately 116 miles from Employer's terminal in Carlisle (232 miles round trip), CRA stated in the July 26th letter that Employer would provide Claimant with a room near its Carlisle facility in order to eliminate the need for daily commuting. CRA also stated that Employer would provide board to Claimant.

Claimant refused Employer's offer of employment, arguing that it was not within the geographic area where Altoona residents would accept employment. Claimant offered to accept employment if it was a reasonable distance from his home.

Sometime after Claimant refused the position, Employer's fleet manager, Linda McKnight, sent Claimant an undated letter explaining that Employer would house Claimant at the Appalachian Trail Inn, a motel located about five miles from the work site. The letter did not describe the accommodations at the Appalachian Trail Inn; nor did it include any discussion of CRA's statement in the July 26th letter that Employer would provide Claimant with board during the work week.

In September of 1995, Employer filed a petition to modify Claimant's benefits, alleging that (1) Claimant was released to modified work by his treating physician, (2) that Claimant was notified of that release and referred to various jobs, and (3) that Claimant failed to follow-up on those job offers in good faith and refused to return to modified work offered by Employer. In his answer to the petition, Claimant admitted that he was released to modified work and that he was notified of certain positions, but he specifically denied that "any of the proposed job positions were within the geographic area where others in the same community would accept employment." (Answer at 1; Reproduced Record (R.R.) at 3.) Employer's petition was assigned to the WCJ, who conducted a hearing in this matter.

Claimant stipulated that work was available at Employer's Carlisle terminal and stipulated that such work was within the physical restrictions set by his physicians. Claimant, however, asserted that Employer's job offer imposed unreasonable travel distance and living conditions on him, and the WCJ received evidence on this issue.

Claimant testified that every one of his neighbors who he knows works in Cambria and Blair Counties, which are geographically close to Altoona. He also testified that, because of his work-related injury, he is unable to shower or comb his hair without assistance of his wife. Claimant stated

---

1. Claimant resides in Altoona with his wife, and Claimant testified that he has a home in that municipality.

that he does physical therapy at home two to three times per day using a pulley exercise device. In addition, Claimant admitted that, before he sustained his work injury, he would be on the road for three or four days at a time and that he would sleep in the sleeper cab of his truck.

Employer presented no witnesses at the hearing, but it did introduce several documents into the record. Employer introduced the medical report of Dr. Perry Eagle, who opined that Claimant's shoulder remains injured and that Claimant will never be able to return to his pre-injury truck driver job. Dr. Eagle reviewed a job analysis of the clerical position offered by Employer and approved the job as within Claimant's physical capabilities. Employer introduced evidence showing that Claimant's treating physician, Dr. Litton, also reviewed the job analysis and approved the clerical position.

The job analysis reviewed by the Drs. Eagle and Litton was admitted into evidence. The job analysis provides that the duties of a clerical assistant include answering the telephone, taking messages, routing calls and filing and copying documents.

Employer also placed correspondence into the record showing that Employer offered Claimant the clerical assistant job in Carlisle, that the job paid five dollars per hour and that Employer offered to house Claimant at the Appalachian Trail Inn. Employer also introduced the letter from Claimant refusing the position because of its location.

After reviewing the above evidence, the WCJ granted Employer's modification petition. The WCJ found that the clerical job was within Claimant's abilities, and, although the job is 116 miles from Claimant's home, Employer's offer to provide lodging in a motel on weekdays made the job available to Claimant. The WCJ rejected Claimant's testimony that he was unable to care for his personal needs as not credible.

Claimant appealed to the Board, which affirmed the WCJ. This appeal ensued.

On appeal, Claimant contends that the WCJ erred in modifying his benefits for the following reasons: (1) Employer presented no evidence showing that the clerical position, located in Carlisle, was within the geographic area where other Altoona residents would accept employment; (2) the 116 mile distance between his home and the work site is unreasonable as a matter of law; and (3) Employer is requiring Claimant to, in essence, relocate his home to Carlisle to accept the position.

■ In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), our Supreme Court established the procedure for modifying a claimant's benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

To determine whether an employer has sustained its burden of offering a claimant a job within his or her occupational category, we may go beyond physical restrictions and limitations and consider a claimant's intellectual capacity, education, age, previous work experience and his place of residence. *Id.*

■ With regard to the proximity of a job to a claimant's residence, we have held that a job is available to a claimant, so long as it is within the geographic area where

others in the claimant's community would accept employment. *Scheib v. Workmen's Compensation Appeal Board (Ames Department Store)*, 143 Pa.Cmwlth. 193, 598 A.2d 1032 (1991). If an employer fails to prove that work is available in the regional labor market where the claimant resides, it has not satisfied the second prong of *Kachinski*. *Peljae v. Workmen's Compensation Appeal Board (Mrs. Smith's Frozen Foods)*, 667 A.2d 763 (Pa.Cmwlth.1995). Also, to determine if a job is within a claimant's reach, we may consider such factors as the availability of transportation, the duration of the commute and the length of the workday. *Dilkus v. Workmen's Compensation Appeal Board (John F. Martin & Sons)*, 543 Pa. 392, 671 A.2d 1135 (1996). Neither this Court nor the Supreme Court has held that a claimant must relocate or establish a residence in a new labor market in order to accept a position proffered by Employer.

■ In the present case, Claimant testified that residents of Altoona do not accept employment in Carlisle; Employer did not contradict this testimony. Hence, the record demonstrates that the job offered by Employer is located outside of the geographic area where Altoona residents accept work. Furthermore, we agree with Claimant that requiring him to a make a daily commute between Altoona and Carlisle, which is a round trip of 232 miles, would be unreasonable, considering both the undue distance and the fact that Claimant, for medical reasons, may only drive one to three hours during an eight-hour workday. *See Karpulk v. Workers' Compensation Appeal Board (Worth and Co.)*, 708 A.2d 513 (Pa.Cmwlth.1998)[2] (150 mile round trip commute was unreasonable because, due to medical limitations, the trip would take the claimant five hours); *see also Womeldorf v. Unemployment Compensation Board of Review*, 59 Pa. Cmwlth. 627, 430 A.2d 722 (1981) (claimant

whose work was reassigned to a facility 80 to 100 miles from his old job site demonstrated good cause for declining the assignment in light of the undue commute).

The critical issue in this case, however, is whether Employer's willingness to provide Claimant with a motel room in Carlisle made the clerical assistant position available to Claimant in spite of the distance of the workplace from Claimant's home in Altoona. We conclude that it did not and was not a reasonable offer made in good faith by Employer under the *Kachinski* standard.

Under the terms of Employer's offer, Claimant would be provided with a motel room at the Appalachian Trail Inn. Because Claimant would work Monday through Friday, he would need to stay overnight in the motel room for at least four nights every week. Hence, to accept the job, Claimant must establish a permanent residence in the Appalachian Trail Inn. Motels, however, are not designed to be a permanent residence, but rather are intended to function as temporary sleeping quarters for travelers and, to that end, typically provide their guests with only a small sleeping room and a bathroom. Such accommodations, in our view, are inadequate.

Employer did not place any evidence into the record outlining the details of the motel room it had arranged for Claimant, and there is no evidence that the room included any important amenities, such as cooking facilities, beyond those found at a typical motel.

Furthermore, although CRA stated in its July 26, 1995 letter that Employer would provide Claimant with "board" during his stay in Carlisle, Employer made no further mention of meals in its subsequent letter. The WCJ did not find as fact that Employer intended to provide Claimant with meals. Obviously, Claimant will need

**2.** *Petition for allowance of appeal denied, —— Pa. ——, —— A.2d —— (No. 384 M.D. Allocatur Dkt.1998, decided November 30, 1998).*

to provide himself with breakfast, lunch and dinner each day he is working in Carlisle. There is no evidence showing that the motel room at the Appalachian Trail Inn has cooking facilities or even a refrigerator; hence, Claimant will be required to take all his meals at restaurants or buy prepared foods. Considering that Claimant is to be paid $5.00 per hour and will gross $40.00 over the course of an eight-hour workday, it is clear that the cost of meals will consume a substantial portion of Claimant's salary and impose a considerable economic hardship on Claimant.

In addition, Claimant is married and has a home and a mortgage. If Claimant had accepted Employer's offer and established a residence in Carlisle, he would be away from his wife and home for most of the week.

■ In light of the above, we believe that, as a matter of law, Employer's offer requiring Claimant to establish a permanent residence at a motel, purchase all of his meals and leave his home and spouse in order to accept a $5.00 per hour position 116 miles from his residence is totally unreasonable.

Employer asserts, however, that its offer of employment is reasonable in view of Claimant's work history. Employer points out that Claimant (1) worked for Employer in Carlisle before his injury, (2) was away from his home and family four to five nights at a time and (3) would sleep in the cab of his truck. We cannot agree.

It is true that Claimant testified that he picked-up merchandise at Employer's Carlisle terminal for delivery to various locations, but he did not testify that he worked in that municipality on a daily basis, and he specifically testified that he never stayed overnight in Carlisle. Also, when Claimant previously traveled to Carlisle, there was no medical limitation on the amount of time he could drive.

Furthermore, Claimant did not specifically testify that his trucking job required him to be away from home for four nights every week, as required by Employer's file clerk position, but rather he stated only that, when he was driving, he was sometimes away for two to four nights per week:[3]

Q. And during that short period of time that you did work [for Employer], when you'd go out on the road, you'd be out on the road two, three, four days at a time sometimes; correct?

A. Yes, sir.

(Notes of Testimony at 21; Reproduced Record at 24.) Claimant testified that, on the days he was not driving, he was at his home in Altoona.

We also note that, unlike file clerks who generally work in a fixed location, "over-the-road" truck drivers must be away from home for some periods of time, as long distance travel is an essential component of such a job. Moreover, the pay for the job proffered by Employer, with a weekly gross wage of $200, at $5.00 per hour, was $447.64 less than Claimant's average weekly wage prior to his injury.[4]

■ In light of the above, we conclude that Claimant's prior working conditions do not make Employer's present job offer reasonable.

Accordingly, the Board's order is reversed.

---

3. Prior to working for Employer, Claimant was employed as a truck driver by Masland Industries for about four and one-half years. Regarding that employment, Claimant testified that he sometimes was away from home for two or more days at a time and that he would sleep in the truck.

4. We must assume that had Claimant accepted the proffered employment he would have been entitled to partial disability benefits of $298.42 per week.

## *O R D E R*

NOW, June 8, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed.