MANSFIELD, Justice
(dissenting).
I respectfully dissent. In my view, the commissioner has misapplied the law to invalidate a seemingly reasonable temporary rehabilitation and light-duty work *528 program. That program appears well-designed to serve the needs of both an Iowa employer and its employees. Additionally, I see no basis for the commissioner’s factual finding that a truck driver who has lifting restrictions but can still obtain and perform work as a truck driver has suffered a sixty percent loss of earning capacity. For these reasons, I would reverse and remand.
I. Background.
Tim Neal, a forty-seven-year-old high school graduate who lives in southeast Illinois close to the Indiana state line, was employed by the TMC division of Annett Holdings as an over-the-road flatbed truck driver. Although Neal’s driving duties took him far from home, he was able to return home on weekends. On September 13, 2007, while climbing onto a load of plywood lumber to secure a tarpaulin in southern Michigan, Neal sustained an injury to his right shoulder. He was put on certain medical restrictions and was then off work from September 14 until the beginning of October 2007.
During that time, Annett offered light-duty work that would meet Neal’s medical restrictions at TMC’s headquarters in Des Moines, Iowa. Annett owns a motel there and has a regular rehabilitation/light-duty work program for its drivers. As described by the commissioner:
Annett Holdings maintains a regular physical therapist for on-site therapy, and the motel features a fitness room, examination room, and swimming pool. Drivers performing light duty work are furnished transportation home every other weekend; travel time does not count as weekend time.
Thus, under Annett’s program, employees are provided transportation home at the employer’s expense every other weekend, with the travel time not counting against their weekend time. Employees have the option of traveling home on the other weekends, but must do so at their own expense.
Neal initially agreed to go to Des Moines for the light-duty program. He was going to be picked up over the weekend and driven to Des Moines, but claims there was a “misunderstanding” because the driver called his cell phone rather than his home phone and his cell phone has a dead spot at home. Neal admits he never tried to contact his employer when his ride did not show up. He also admits he refused an offer of another ride to get to Des Moines. Instead, Neal went to his doctor and obtained a full release so he could return to his former job of truck driving. He performed those duties once again from early October 2007 until he had arthroscopic shoulder surgery in March 2008.
Following surgery, Neal was again offered light-duty work in Des Moines and again declined. Neal said that one of his assignments would have involved checking TMC trucks for possible safety issues, and he considered that being a “snitch.” Neal also said that he wouldn’t be able to see his family as much and offered several other reasons for not undertaking the light-duty job. As summarized by the commissioner, “Neal’s reasons for refusing light duty work in Des Moines in March 2008 are also multiple and unclear.”[3]
Neal had a second arthroscopic shoulder surgery in June 2008. He remained off work after that. The commissioner subsequently found that Neal attained maximum medical improvement in November 2008. *529 In January 2009, Neal was released by his own physician to return to work with restrictions of no lifting over forty pounds from floor to waist, no lifting over fifteen pounds from floor to overhead, and no repetitive lifting of lesser weight with the right arm. Neal has a full range of motion in that arm. According to Neal’s own testimony, the surgery was successful, he could perform all of his day-to-day functions with his right arm, and he could do a full 360 degree windmill with his right arm. As of the hearing in February 2009, Neal had not yet obtained new employment, although he had just begun looking.
In addition to truck driving, Neal has prior work experience in construction and as an oil field pumper. Neal admitted that he could return to oil field work or truck driving, just not flatbed truck driving. He also admitted there are many truck driving positions out there that do not involve flatbeds.
The two issues in the case are whether the light-duty job that Neal refused to perform during the healing period was “suitable work,” and whether substantial evidence supports a finding that Neal now has a sixty percent industrial disability.
The deputy who heard the hearing testimony found that Neal had been offered “suitable work” and that he had a fifteen percent industrial disability. Neal timely appealed the arbitration decision. In his appeal decision, the commissioner adopted the deputy’s factual findings for the most part but modified his conclusions on these two key points.[4]
On the suitable work issue, the commissioner cited only one reason why the offered light-duty work was not suitable— because Neal would be home every other weekend rather than every weekend.
Regarding Neal’s degree of disability, the commissioner added several observations while increasing the disability percentage from fifteen to sixty percent. On that score, the deputy had written:
Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has actual industrial loss. He could continue to drive over-the-road, but realistically wishes to avoid flatbed trucks with attendant tarping duties. Neal could well still function as a construction supervisor, but probably not as a construction carpenter. Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity on the order of 15 percent of the body as a whole, or the equivalent of 75 weeks of permanent partial disability.
The commissioner concluded as follows:
Claimant is ⅛7 years old. His age would make retraining difficult. Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has quite significant industrial loss. He is unable to return to flatbed truck driving, the type of work for which he is best suited given his work history. He cannot return to any driving duties that would require heavy or medium lifting. His limitations prevent a return to construction, other than as a non-working supervisor. Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity of sixty percent (60%). This entitles claimant to 300 weeks ofperma- *530 nent partial disability benefits commencing on November 9, 2008.
(Emphasis added to show modifications of the deputy’s findings.)
Nonetheless, the commissioner, like the deputy, did not question Neal’s ability to work as a nonflatbed truck driver. He reiterated the deputy’s findings that Neal “thinks he can work as a truck driver, but not flatbed trucks, due to the necessity to climb loads to secure tarpaulins. He has generally good use of the right arm, but has problems lifting heavy items or lifting his arm above shoulder level.”
Annett petitioned for judicial review of the commissioner’s award. The district court reversed the commissioner on the “suitable work” issue, but sustained his finding of sixty percent industrial disability-
II. The “Suitable Work” Issue.
This case initially presents the question whether an over-the-road trucking company can offer a rehabilitation/light-duty work program from a centralized location. Although this issue has not been litigated before, it is important nonetheless. Iowa has many trucking companies and trackers — they are a vital part of our economy and our workforce. At the same time, the workforce of those companies may be scattered in different locales.
Unfortunately, the commissioner, the district court, and to some extent my colleagues in the majority all take an unduly formalistic approach to this issue. Without addressing the specific circumstances of this case, the commissioner simply decided that an employee who is rehabilitating from a workplace injury should not be expected to spend any increased amount of time away from home, even on a temporary basis. This approach makes it difficult to have a centralized program. It also disregards the specific facts of this case, where the employee was an over-the-road trucker whose work already took him overnight away from home, except on weekends.
On the other hand, the district court — in my view — went too far in the opposite direction. The district court said that any work should be deemed “suitable” if it is “consistent with the employee’s disability.” See Iowa Code § 85.33(3) (2009). This is too narrow a construction of the word “suitable.” The statute reads: “suitable work consistent with the employee’s disability.” By using this phrasing, I believe the legislature has made it a necessary, but not sufficient, condition that the work be consistent with the employee’s disability. If the two modifiers “suitable” and “consistent with the employee’s disability” meant the same thing, there would be no need to include both of them. See Iowa Code § 4.4(2) (setting forth a presumption that the entire statute is intended to be effective).
The foregoing reading of the law also makes sense. Geography should be relevant. It would be unrealistic and unfair to expect an employee to commute hundreds of miles a day, for example, to go to a temporary light-duty work assignment.
But the majority’s approach is also too formalistic. The majority cites a raft of precedents. Yet all of them involve situations where the employee would have to undergo a lengthy daily commute or move permanently elsewhere. See, e.g., Litzinger v. W.C.A.B., 731 A.2d 258, 262-63 (Pa.Commw.Ct.1999) (holding it was unreasonable to require a former over-the-road track driver to accept a $5.00 per hour permanent light-duty work assignment that would either result in a daily commute of 116 miles each way or require him to move permanently into an employer-provided motel). Those cases are not on *531 point. Neal was not asked to do those things. To the contrary, Annett’s program, as described in the record, strikes me at first blush as a reasonable way to accommodate the needs of a trucking company and an over-the-road trucker during the temporary period where the trucker is recovering from a workplace injury.[5]
I wholeheartedly agree with the majority that “geographic proximity is a factor to be considered.” At the same time, it is not the same kind of factor in every employment context. By lumping together many disparate cases, which involve everything from mitigation of damages to permanent disability to unemployment compensation, my colleagues in the majority oversimplify the inquiry. Geography has a different significance in different situations. I would hold that “suitable work” for purposes of Iowa Code section 85.33(3) may require the employee to travel temporarily so long as the work is offered in good faith to meet the needs of the company and the travel is at the employer’s expense.
Another Pennsylvania decision illustrates this more nuanced approach. See Trout v. W.C.A.B., 836 A.2d 178 (Pa.Commw.Ct.2003). In Trout, the employee — a truck driver — sustained a knee injury in the course of employment. Id. at 179. The employer offered her light-duty work. Id. For a while, she worked as a traveling field recruiter, was provided a company vehicle, and was required to visit truck stops within a 100 to 150-mile radius of her home. Id. This meant that the employee on occasion had to stay away from home for several nights. Id. at n. 3. This arrangement nonetheless was deemed by the court to be “suitable” work. Id. at 184 n. 12. However, after a time, the employer told the employee she would be required to work permanently out of an office 150 miles away. Id. at 180. This meant the employee would have to commute 300 miles a day. Id. The court found the new light-duty job did not constitute suitable and available work within the meaning of Pennsylvania workers’ compensation law. Id. at 184-85. I agree with this approach and with the Pennsylvania court’s distinction between the two assignments.
I would reverse and remand for the commissioner to apply the foregoing standard. Geography is relevant, but the mere fact that a temporary light-duty job may require some more travel at the employer’s expense is not sufficient grounds by itself for deeming it “unsuitable.” Where an Iowa employer comes up with a seemingly logical plan to give its injured employees useful tasks while helping them recover from their injuries, that plan should not be dismissed out of hand simply because it will take the employee temporarily away from home at the employer’s expense.
III. The Sixty Percent Disability Issue.
The other issue is the percentage of disability. The majority kneads and rolls the facts of the ease trying to mold some support for the commissioner’s sixty percent total disability determination.[6] I be *532 lieve there is none. The essential undisputed facts are: (1) Neal can no longer work at his most recent position as a flatbed truck driver; but (2) he can work as an ordinary truck driver, and there are many such jobs available. The majority refers to “countervailing evidence” but this is not a situation where the evidence is in conflict. Rather, what Neal is capable of doing and what he is not capable of doing are essentially undisputed. On this record, I cannot accept that Neal is sixty percent disabled.
The determination of industrial disability “rests on a comparison of what the injured worker could earn before the injury as compared to what the same person could earn after the injury.” Second Injury Fund of Iowa v. Nelson, 544 N.W.2d 258, 266 (Iowa 1995). While I could certainly affirm the deputy’s finding of fifteen percent disability had the commissioner adopted it, there is no substantial evidence to support the conclusion that Neal has suffered a sixty percent loss in earning capacity because of his shoulder injury and reduced lifting capacity. See Swiss Colony, Inc. v. Deutmeyer, 789 N.W.2d 129, 137-38 (Iowa 2010) (noting that industrial disability is intended to measure an injured worker’s lost earning capacity and finding substantial evidence to support a finding of sixty percent disability when a worker had lost his foot and lower leg in an industrial accident).
As we have said:
Nothing in the statute supports giving the hearing officer’s proposed decision elevated status when, as in the present case, the officer and the agency disagree. The statute gives the agency an unfettered right to find the facts in the first instance. It makes the hearing officer an adjunct of the agency rather than an independent decisionmaker.
This does not mean a disagreement on the facts between the officer and the agency may not affect the substantiality of the evidence supporting the agency decision. When the agency decision is attacked on the substantial evidence ground in section 17A.19(8)(/) [now 17A.19(10)(/)], the district court must examine the entire record. This includes the hearing officer’s decision. § 17A.12(6)(e) and (/) [now 17A.12(5)(e) and (/)].
Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm’n, 322 N.W.2d 293, 294-95 (Iowa 1982).
I would reverse both the district court and the commissioner on the percentage of disability and would remand for further findings by the commissioner on this subject.
CADY, C.J, and WATERMAN, J„ join this dissent.

. Neal admitted at one point he would prefer to be home at night with his new family, including his wife (a full-time nurse) and their eighteen-month-old child. He said that he didn't "want to go on the road anymore.”

. The commissioner delegated the authority to decide the appeal to another deputy.

. The majority relies on a number of unemployment insurance cases. Those cases involve situations where the employee was being required to take a new permanent job in a different community. That is a very different circumstance from the present.

. One example of this is the majority's observation that "Neal's absence from work during the healing period is a factor that could affect employability.” The commissioner did not cite this consideration in his ruling. In fact, Neal acknowledged in his hearing testimony that many truck driving positions were available. Moreover, as we have noted earlier, Neal was offered temporary light-duty work *532 during the healing period and declined to accept it.