IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Rossi, :
 :
    Petitioner :
 :
   v. : 1381 C.D. 2022
 : Submitted: June 4, 2024
Cleveland Brothers Equipment Co. :
(Workers' Compensation Appeal :
Board), :
 :
    Respondent :


BEFORE: HONORABLE ANNE E. COVEY, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge (P.)
    HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK    FILED: June 28, 2024


   Mark Rossi (Claimant) petitions for review of a decision of the Workers' Compensation Appeal Board (Board), which affirmed a workers' compensation judge's (WCJ) order denying Claimant's Reinstatement Petition. On appeal, Claimant asserts, *inter alia*, that the WCJ erred by finding that Cleveland Brothers Equipment Co. (Employer) offered Claimant a position within his "usual employment area" as required by the Workers' Compensation Act (Act).[1] After careful review, we reverse.

   Claimant was injured in the course of his employment on October 29, 2008, which Employer accepted by a Notice of Compensation Payable (NCP)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

describing his injury as a right knee anterior cruciate ligament (ACL) tear. WCJ's Opinion, 4/8/21, at Finding of Fact (F.F.) No. 1. The NCP established his weekly compensation rate as $580.14 effective January 24, 2009. *Id.* However, as of May 4, 2010, Claimant's benefits were suspended. *Id.* at F.F. No. 2. Relevant now, Claimant filed the instant Reinstatement Petition, "seeking to reinstate his benefits as of March 1, 2016, because his 'employment was terminated while he was on restrictions for his work injury.'" *Id.* at F.F. No. 3.

By way of background, Claimant testified that he began working for Employer in its parts department in 2006. In this capacity

> he would assist customers with looking up the specifications for parts, and obtaining, ordering, or accepting returns of parts. Additionally, he performed general warehouse duties including sweeping floors and stocking shelves, as well as handling some deliveries. He worked with anything from very small parts to larger parts weighing over 100 pounds, which could be lifted anywhere from the floor to the top shelf. If necessary, he used a platform ladder or for lift for higher parts.

WCJ's Opinion at F.F. No. 7a. In fact, Claimant sustained his injury when he fell two to three feet off a ladder and hyperextended his knee. *Id.* at F.F. No. 7b. Thereafter, Claimant continued working for Employer until he underwent his first surgery to treat his injury. *Id.* Claimant received workers' compensation benefits for the 10 months after the surgery while he was not working, but ultimately returned to work for Employer with restrictions. *Id.* This continued until he underwent a second surgery to treat his injury on July 27, 2012. *Id.* at F.F. No. 7c.

Claimant did not return to work after his second surgery until January 2013. WCJ's Opinion at F.F. No. 7e. During this period, Claimant again worked for Employer within his restrictions until June 2015 when he underwent surgery for

2

an unrelated back condition. *Id.* Upon being released to return to work with restrictions yet again, Employer informed Claimant that his previous position at their New Stanton, Pennsylvania, location was unavailable. *Id.* at F.F. No. 7f. Instead, Employer offered Claimant a "parts warehouse" position at its Cranberry, Pennsylvania, location. *Id.* at F.F. No. 7i. Claimant believed that the Cranberry position entailed heavier lifting, but ultimately declined Employer's offer because of the mileage between his home and Cranberry - at least a 41-mile drive. *Id.* Thereafter, Claimant obtained employment with a multitude of employers. *Id.* at F.F. No. 7f. However, due to his knee and back restrictions, Claimant did not last long in any position. *Id.* In 2018, he left his position in a shipping and receiving department after being diagnosed with ulcerative colitis. *Id.* Additionally, Claimant maintains that he still suffers from sharp piercing pain, swelling and stiffness in his right knee. *Id.* at F.F. No. 7g.

At a hearing on December 12, 2019, Employer submitted the deposition testimony of its Labor Relations Manager, Deborah Zundel (Zundel). Zundel testified that because the New Stanton position was not open to Claimant in 2016, Employer offered Claimant the same position at Cranberry. WCJ's Opinion at F.F. No. 8b. Claimant declined once verbally and a second time by letter. *Id.* at F.F. No. 8c. Zundel recalled Claimant's initial reason being that Employer's Cranberry location was too far from his home, but also that he was worried about hurting his knee. *Id.* This reasoning surprised Zundel because the New Stanton and Cranberry positions entailed the exact same duties, but added that Claimant never expressed concern about the job duties specific to the Cranberry position. *Id.*

Additionally, Employer presented the deposition testimony of Employer's general parts manager, Steven Truxal (Truxal). Truxal testified that a

3

parts warehouse position with Employer includes "being forklift certified, loading and unloading trucks, identifying, pulling, and stocking parts, interacting with customers, filling orders, and staging the will call area." WCJ's Opinion at F.F. No. 10c. Moreover, this position should not require lifting more than 50 pounds, because a mobile assist like a forklift or hand truck is supposed to be used for anything heavier. *Id.* This 50 pound restriction is company policy and applied to both the Cranberry and New Stanton positions, even though a Cranberry parts warehouse employee may "deal with hydraulic parts and parts for construction equipment." *Id.* at F.F. Nos. 10d, 13f. Later, Truxal "testified on cross examination that the size and weight of the parts that a parts person would deal with at both locations was pretty much the same." *Id.* at F.F. No. 13a.

Claimant offered further testimony regarding his decision to decline the Cranberry parts warehouse position on April 21, 2020. In relevant part, he admitted that he was familiar with the Cranberry position because he had worked there for two days in 2015 or 2016 to cover for another employee who had been suspended. WCJ's Opinion at F.F. No. 11b, 11d. He testified that the Cranberry position required moving much heavier equipment than the New Stanton position, including bulldozer equipment, tractor equipment, and earth moving equipment. He believed the parts could weigh anywhere from 80 to 125 pounds. *Id.* at F.F. No. 11c.

On June 16, 2020, Claimant again offered further testimony, but this time it was for the purpose of correcting his earlier testimony regarding the Cranberry position. First, he clarified that he had been asked twice to work at the Cranberry position, which initially involved him spending a day and a half just "learning the system" and that this occurred before his work injury. WCJ's Opinion at F.F. No. 12a. He added that in addition to involving lighter weight objects,

4

Claimant believed that the New Stanton position involved more clerical work than the Cranberry position. *Id.*

Relying partially on the above testimony, the WCJ denied Claimant's Reinstatement Petition.[2] Regarding conflicting testimony, the WCJ found:

> Claimant testified before me on three occasions, including once in person. I observed his demeanor and considered his testimony and the manner in which he offered it. After carefully considering these matters, I find Claimant's testimony about how the injury occurred to be credible and believable, particularly when verified by the two medical witnesses who testified before me. I do not however find his testimony about why he failed to accept the proffered job from [] Employer to be credible due to the inconsistencies in his testimony about the Cranberry job as is more fully discussed below.

WCJ's Opinion at F.F. No. 21. Although the WCJ found that Claimant continues to suffer from the effects of his work injury,[3] *see id.* at F.F. No. 22a-e, he also found that Employer did not have work available to Claimant "at his time-of-injury facility." *Id.* at F.F. No. 23.

Critically, the WCJ found that the evidence of record indicated Claimant's reason for declining the Cranberry position was due to the travel distance. WCJ's Opinion at F.F. No. 24. To that end, the WCJ relied on Zundel's testimony which related that Claimant's initial reason for declining the position "was that he did not want to travel the distance." *Id.* at F.F. No. 24a. The WCJ found that any mention of Claimant's continuing knee injury was simply "a passing comment." *Id.* In concluding as much, the WCJ also relied on the offer of employment sent via

---

[2] The WCJ's Opinion may be found in the Reproduced Record (R.R.) at 18a-37a.

[3] On this point, the WCJ relied on the testimony of Dr. Gregory Habib, D.O. *See* WCJ's Opinion at F.F. Nos. 14, 22.

letter by Employer's General Counsel, Claimant's own testimony, and the testimony of its employment specialist indicating that Claimant was only open to non-union employment which was near his home. *Id*. at F.F. No. 24b-f.

The WCJ likewise found that Claimant had failed to demonstrate that the distance from his home to the Cranberry location "rendered the proffered job reasonably unavailable." On this point the WCJ reasoned:

> The mere fact that the work made available for Claimant by Employer [was] an 88- or 91-mile roundtrip does not render the work reasonably unavailable to Claimant so as to excuse his failure to accept it. In so finding, I note:
>
> > a. Claimant offered no direct evidence that travel of that distance rendered the work reasonably unavailable. Instead, he relied upon a bald statement in his findings that such travel is clearly unreasonable.
> >
> > b. I take notice of the fact that in my years as a [WCJ], I have presided over a number of cases where injured workers have commuted an hour or more one way which would be comparable, if not longer, than the travel time Claimant testified would have been involved if he had accepted the Cranberry position.
> >
> > c. I further noted that from my personal life, I know of people in the Irwin/North Huntingdon area who either travel approximately an hour or so to Pittsburgh and even some who travel to Cranberry Township.
> >
> > d. The point of these recollections is that such travel is not in and of itself [] inherently unreasonable so as to render the proffered job unavailable without further evidence. While there may have been compelling circumstances that rendered such a commute

6

for Claimant to be unreasonable, he never offered evidence of any compelling reason.

e. While it is understandable that Claimant may wish for personal preferences not to travel long distances to go to work[,] that does not render the proffered job to be reasonably unavailable to him because of the distance. The job was reasonably available for him. His personal preferences as to travel is not enough.

WCJ's Opinion at F.F. No. 25a-e. Similarly, the WCJ found that the Cranberry position was within Claimant's physical capabilities and Claimant failed to show his wage loss was through no fault of his own. *Id*. at F.F. Nos. 26-27. Claimant appealed.

Initially, the Board issued a decision reversing the WCJ for misallocating the burdens of proof required for a Reinstatement Petition. *See* R.R. at 46a-57a. However, the Board rescinded its decision after acknowledging that it had received a request for briefing extension from Employer contemporaneously with the issuance of its decision. *Id*. at 58a-61a.

Thereafter, in a decision circulated on November 21, 2022,[4] the Board affirmed the WCJ. In relevant part, the Board observed that Claimant bore the burden of proving that his loss in earning power was once again being hindered by his disability and stems from his original claim. Board Opinion, 11/21/22, at 6 (citing *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 2 A.3d 548 (Pa. 2010)). However, it also noted that Claimant was entitled to a presumption that his earning power was hindered by his continuing work injury, because he returned to work within his restrictions but was thereafter laid off. Board Opinion at 6 (citing *Teledyne McKay v. Workmen's Compensation Appeal Board*

---

[4] The Board's Opinion may be found in the Reproduced Record at 62a-72a.

*(Osmolinski)*, 688 A.2d 259 (Pa. Cmwlth. 1997). Consequently, the burden shifted from Claimant to Employer to demonstrate that the loss in earning power was caused by something other than the continuing work injury, such as a bad faith rejection of available work within Claimant's restrictions. Board Opinion at 6-7.

On that point, the Board agreed with the WCJ that Employer had met its burden. The Board reasoned:

> The WCJ accepted Dr. Habib's testimony that Claimant continued to need work restrictions, but also accepted both []Zundel['s] and []Truxal's testimony that the offered Cranberry position was within Claimant's work restrictions. Furthermore, the WCJ accepted []Zundel's testimony that Claimant's sole reason for not accepting the Cranberry job offer was due to the travel distance, not an inability to work the offered job. The WCJ also rejected Claimant's testimony that his work injury caused him to be unable to work the offered Cranberry job. Consequently, [Employer] met its burden of proving that Claimant's disability was not caused by his work injury, but a bad faith rejection of available work within his restrictions.

Board Opinion at 7. The Board likewise rejected Claimant's argument that the Cranberry position was outside of his "usual employment area" as required by Section 306(b)(2) of the Act, 77 P.S. §512(2). *Id.* Observing that an employment offer will be considered within a claimant's usual employment area if "others in the claimant's community would accept employment[,]" the Board again agreed with the WCJ's conclusion. *Id.* at 8 (citing *Bentley v. Workers' Compensation Appeal Board (Pittsburgh Board of Education)*, 987 A.2d 1223 (Pa. Cmwlth. 2009)). The Board reasoned that "[t]he commute was only around 40 miles each way and the WCJ specifically rejected Claimant's testimony that the commute was unreasonable or outside where other employees in his community would accept employment.

8

Given the commute was not excessively long or shown to be egregious in any way, we cannot conclude that the WCJ abused his discretion . . . ." Board Opinion at 8. This timely appeal followed.

On appeal,[5] Claimant presents the following issues for our consideration.[6] First, Claimant argues that the WCJ erred by placing the burden of proof regarding Claimant's job availability on Claimant rather than Employer and concluding that the Cranberry position was within Claimant's usual employment area. Additionally, Claimant believes the WCJ erred in finding that the Cranberry position was within Claimant's physical capabilities and concluding Claimant acted in bad faith when he declined the Cranberry position.

First, Claimant argues that the WCJ erred by misallocating the burden of proof concerning whether the Cranberry position was reasonably available to Claimant. Petitioner's Brief at 40. Relying on *Budd Company v. Workers' Compensation Appeal Board (Kan)*, 858 A.2d 170 (Pa. Cmwlth. 2004), Claimant contends that when he established the causal connection between the loss of his earning power by presumption, the burden should have shifted to Employer to demonstrate that it had provided an offer of available work to Claimant within his restrictions to defeat Claimant's Reinstatement Petition. Petitioner's Brief at 40. Claimant reminds this Court of the WCJ's findings that Claimant still continues to suffer from his work injury and that Employer had no work within his restrictions available at the New Stanton facility. *Id*. at 41. On that point, Claimant directs our

_____

[5] Our "review is limited to a determination of whether there has been an error of law, whether constitutional rights were violated, or whether necessary findings were supported by substantial evidence." *Jamieson v. Workmen's Compensation Appeal Board (Chicago Bridge & Iron)*, 691 A.2d 978, 982 (Pa. Cmwlth. 1997).

[6] In his brief, Claimant presents seven issues for our consideration. However, we have combined these issues for clarity.

9

attention to the WCJ's phrasing regarding the reasonable availability of the Cranberry position, because the WCJ stated "Claimant has not shown that travel to the Cranberry Township facility rendered the proffered job reasonably unavailable." *Id*. at 41-42. In Claimant's view, this phrasing evidences the WCJ's error in placing the burden of reasonably available work on him rather than Employer. *Id*. at 42.

Next, Claimant avers that the WCJ erred in concluding that the Cranberry position was within his usual employment area. Claimant asserts that the WCJ erred on the following bases: (1) the competent evidence of record does not support this conclusion; (2) the WCJ impermissibly relied on his own personal experience in reaching this conclusion; and (3) finding that Claimant's commute would not be "excessively long or egregious in any way" was an improper standard for finding that the offered position was within his usual employment area. Petitioner's Brief at 33. In support, Claimant cites *Peljae v. Workers' Compensation Appeal Board (Mrs. Smith Frozen Foods)*, 667 A.2d 763 (Pa. Cmwlth. 1995), for the proposition that "in order to prove that work is available, an employer must prove that the distance to the job is within the geographic area of others in the same community." Petitioner's Brief at 44. In contrast, here, Claimant believes that Employer failed to carry its burden in proving that the distance from Claimant's home in Cranberry was reasonable. *Id*. Rather, Claimant contends that the only evidence relied upon was that of the WCJ's own personal experience. *Id*. at 44-46.

In response, Employer asserts that the WCJ properly took judicial notice of the reasonable availability of the Cranberry position, but also argues that the WCJ relied on Claimant's own admission that he had previously commuted to Cranberry to work in the same position. Respondent's Brief at 14-17. Moreover, Employer believes that the caselaw cited by Claimant is distinguishable from the

10

instant case. *Id*. at 17. First, Employer reminds this Court that *Peljae* is distinguishable because the procedural posture therein involved a modification petition rather than a reinstatement petition. *Id*. at 18. While acknowledging our holding in *Peljae* that the employer bears the burden of establishing that the employment is within a claimant's geographic area, Employer does not read *Peljae* to preclude reliance on evidence like Claimant's own admission or a WCJ's judicial notice. *Id*. Finally, Employer cites to our decision in *Litzinger v. Workers' Compensation Appeal Board (Builders Transport)*, 731 A.2d 258, 262 (Pa. Cmwlth. 1999), wherein we observed that the claimant's uncontradicted testimony regarding the offered employment being outside of the claimant's usual employment area was sufficient to establish that fact. Respondent's Brief at 19. Consequently, Employer argues that Claimant's admission of his previous work at the Cranberry location should be enough to establish the opposite now. *Id*.

We agree with Claimant. Initially, Pennsylvania law permits a partially disabled worker to receive workers' compensation benefits "equal to a percentage of the difference between his pre-injury wages and his earning power after the injury." *Riddle v. Workers' Compensation Appeal Board (Allegheny City Electric, Inc.)*, 981 A.2d 1288, 1290 (Pa. 2009) (citing 77 P.S. §512(1)). Earning power is measured by a claimant's capability and the job availability in his usual employment area. Section 306(b)(2) of the Act, 77 P.S. §512(2), provides in pertinent part:

> (2) "Earning power" shall be determined by the work the employe is capable of performing . . . . Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment *which exists in the usual employment area in which the employe lives within this Commonwealth*.

11

(Emphasis added.)

> [a] claimant seeking reinstatement of suspended benefits must prove that: (1) his earning power is once again adversely affected by the work-related injury; and (2) the disability that gave rise to the original claim continues. Once the claimant meets this burden, the burden shifts to the party opposing reinstatement to show that the claimant's loss in earnings is not caused by the disability arising from the work injury.

*Dougherty v. Workers' Compensation Appeal Board (QVC, Inc.)*, 102 A.3d 591, 595 (Pa. Cmwlth. 2014) (citing *Bufford*, 2 A.3d at 558; *Teledyne McKay*, 688 A.2d at 261-62)). However, where a claimant has been laid off after returning to a modified-duty position, he is entitled to the presumption that his disability is causally related to the continuing work injury. *Dougherty*, 102 A.3d at 595. Once this presumption is established, the burden shifts to the employer to demonstrate that the claimant's loss in earnings is not caused by the work-related disability by proving that there is suitable work available to the claimant. *Id*.; *Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Company)*, 683 A.2d 342, 347 (Pa. Cmwlth. 1996).

Indeed, we have previously held that "jobs are available to a claimant if they are 'within the geographic area where others in the claimant's community would accept employment.'" *Bentley*, 987 A.2d at 1229 (quoting *Litzinger*, 731 A.2d at 261-262). "Factors to be considered in determining whether work is available to [a c]laimant or within [the c]laimant's reach include [the c]laimant's physical limitations, age, intellectual capacity, education, prior work experience, and other relevant considerations, such as [the claimant's] place of residence." *Titusville*

12

*Hospital v. Workmen's Compensation Appeal Board (Ward)*, 552 A.2d 365, 367 (Pa. Cmwlth. 1989).

Taken together, because Claimant was entitled to a presumption that his continuing work injury was causally related to his loss in earning power, *Employer* bore the burden of rebutting this presumption by demonstrating that it offered him employment within his usual employment area. However, a review of the WCJ's Opinion indicates that the WCJ prematurely shifted the burden of proof to Claimant. Upon finding that Claimant rejected the Cranberry position due to distance rather than his work-related injury, *see* WCJ's Opinion at F.F. No. 24, the WCJ considered whether Claimant had proven that the Cranberry position was not reasonably available to him. *Id*. at F.F. No. 25. However, Claimant's rejection of the Cranberry position due to distance was an inappropriate trigger, because our clearly established burden-shifting framework charged Employer with affirmatively proving that his loss in earnings was not caused by his disability, *i.e.*, that the Cranberry position was reasonably available to Claimant. *See Bufford*, 2 A.3d at 558.

On that point, Employer failed to offer any competent testimony that members of Claimant's community would accept offers of employment in Cranberry, be it by a vocational expert's testimony or otherwise. Although it is true that the WCJ "as factfinder must have some latitude in determining what is 'available' to a specific claimant on the basis of the numerous factors set forth in *Titusville*[,]" *Goodwill Industries of Pittsburgh v. Workmen's Compensation Appeal Board (Friend)*, 631 A.2d 794, 796 (Pa. Cmwlth. 1993), that does not mean the WCJ may bear the evidentiary burden on Employer's behalf. Hence, whatever the value of the WCJ's personal experience may be, it is not a substitute for an employer's

evidentiary burden in this context. Furthermore, a two-day stint at the Cranberry location to cover another employee's suspension is not the damning admission that Employer portrays it as. Many members of Claimant's community may have accepted the Cranberry position knowing it was on a short-term basis. This does not mean they would have accepted it on a regular basis. Thus, while it may very well be the case that the Cranberry position was available to Claimant, Employer failed to make that case.[7]

To conclude, the Board erred in affirming the WCJ because it was Employer, rather than Claimant, which bore the burden of demonstrating that others in Claimant's community would accept the offered employment. To that end, Employer failed to offer any such evidence. Because these issues are dispositive, there is no need for us to reach the remaining issues.

Accordingly, the Board's decision is reversed.

_____
MICHAEL H. WOJCIK, Judge

---

[7] Furthermore, although Employer is correct in noting that *Peljae* is procedurally distinguishable, *Peljae* nevertheless instructs that an employer cannot "sustain its burden of proving [the claimant] refused actually available employment without presenting such evidence." *Peljae*, 667 A.2d at 765 (citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 532 A.2d 264, 379-380 (Pa. 1987)); *Moreno-Leonardo v. Workmen's Compensation Appeal Board (Kozel Engineering)*, 643 A.2d 151, 154 (Pa. Cmwlth. 1991) ("This Court has held that absent proof by an employer that suitable work is available to a claimant within the area of his or her residence, the employer has failed to show that work is within the claimant's reach.").

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Rossi, : 
                    Petitioner : 
                       v. : 1381 C.D. 2022
:
Cleveland Brothers Equipment Co. : 
(Workers' Compensation Appeal : 
Board), : 
:
                    Respondent :

## O R D E R

AND NOW, this 28th day of June, 2024, the November 21, 2022 decision of the Workers' Compensation Appeal Board is **REVERSED**.

 

 

_____
MICHAEL H. WOJCIK, Judge