**Anthony BENTLEY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PITTSBURGH BOARD OF EDUCATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted March 27, 2009.

Decided Nov. 18, 2009.

Richard S. Belkin, Pittsburgh, for petitioner.

Gregory J. Fischer, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Anthony Bentley (Claimant) petitions for review of an adjudication of the Work-

---

1. The case was reassigned to this author on June 1, 2009.

ers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) to grant the modification petition filed by the Pittsburgh Board of Education (Employer). The principal issue in this appeal is whether Employer promptly provided Claimant with a Notice of Ability to Return to Work, as required by Section 306(b)(3) of the Workers' Compensation Act[2] (Act). On July 29, 2009, this Court affirmed the Board. Thereafter, Claimant filed a petition for reconsideration, and it was granted; accordingly, the July 29, 2009, opinion and order was withdrawn. The question on reconsideration is whether Claimant is entitled to his litigation costs because the Board changed the effective date of his modification of benefits. Concluding that he is not, we affirm the Board after reconsideration.

On November 20, 2001, Claimant sustained a work injury to his left shoulder while performing his job as an electrician. Employer issued a Notice of Temporary Compensation Payable (NTCP) describing the injury as a left shoulder strain and providing for payment of total disability benefits in the amount of $622.13 per week based on an average weekly wage of $933.20. Reproduced Record at 4a (R.R. ——). The NTCP subsequently converted to a Notice of Compensation Payable.

Claimant's treating physician, Steven E. Kann, M.D., referred Claimant for a Functional Capacities Evaluation (FCE) to determine what level of work he could perform. The FCE was conducted on January 22, 2003, and it revealed that Claimant was capable of at least light-duty work, eight hours per day.[3] Accordingly, Dr. Kann issued a report on January 30, 2003, stating that he reviewed the FCE results with Claimant and was releasing Claimant to light duty.

At Employer's request, a vocational expert, Lizbeth Mihok, met with Claimant on March 14, 2003. Thereafter, Mihok did an earning power assessment and labor market survey, locating ten light-duty jobs within 25 miles of Claimant's home. These jobs were found available to Claimant on the basis of his age, education, physical limitations and residual productive skill. Given the wages payable for these jobs, Mihok determined that Claimant had an earning power of $420 per week. The jobs were found to be available as of May 5, 2003.

Employer filed a petition to modify Claimant's benefits to partial disability as of January 22, 2003, the date of the FCE.[4]

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(3). Section 306(b)(3) provides:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide *prompt written notice*, on a form prescribed by the department, to the claimant, which states all of the following:
> (i) The nature of the employe's physical condition or change of condition.
> (ii) That the employe has an obligation to look for available employment.
> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. § 512(3) (emphasis added).

**3.** Christine Osman, DPT, PT, who administered the FCE, reported that Claimant demonstrated several inconsistencies during the examination and gave a "very poor effort or voluntary submaximal effort." R.R. 21a. Because of this, Osman explained that light-duty work should be considered only the baseline level of what Claimant can actually physically do.

**4.** Section 306(b)(2) of the Act provides in relevant part:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability par-

The petition stated, *inter alia*, that employer had no positions that fit within Claimant's restrictions "from the date of the filing of the relevant Notice of Ability to Return to Work (which was filed on or after 1/22/03) to the date of the filing of the instant Petition." R.R. 7a. Claimant did not file an answer. At the hearing with the WCJ, however, Claimant challenged Employer's assertion that it had no positions appropriate for Claimant. Claimant did not specify any other objections to Employer's modification petition.

At the hearing, Employer presented the FCE results and Dr. Kann's January 30, 2003, medical report. Employer also presented Mihok's testimony concerning her vocational interview with Claimant and the results of her earning power assessment and labor market survey. Because Claimant disputed Employer's claim that it had no jobs that fit Claimant's limitations, Charlotte Borner, Employer's workers' compensation adjuster, and Edward Reinhardt, Jr., its electrical foreman, also testified. Borner and Reinhardt confirmed that Employer did not have a position appropriate for Claimant. Borner also testified about her handling of Claimant's situation. She explained that after receiving Dr. Kann's report in late January 2003 releasing Claimant to light-duty work, she sent Claimant a Notice of Ability to Return to Work, on Bureau Form LIBC–757.

The WCJ granted Employer's modification petition. The WCJ credited the medical opinion of Dr. Kann regarding Claimant's capabilities; the earning power assessment by Mihok; and the testimony of Borner and Reinhardt that Employer had no work for Claimant within his restrictions.[5] The WCJ rejected the testimony of Claimant and his vocational witness, Daniel Rappucci, who opined that the jobs located by Mihok were not suitable for Claimant. Concluding that Employer met its burden of proving that there were jobs available to Claimant within his geographic area that fit his capabilities, the WCJ modified Claimant's benefits to the partial disability rate of $342.13 per week as of January 22, 2003.

Claimant appealed, arguing, *inter alia*, that Employer failed to prove that it gave him a Notice of Ability to Return to Work in a timely manner, an issue not raised at the hearing. The Board remanded for the WCJ to make findings regarding this issue. On remand, the WCJ noted that Employer's Notice did not recite a date of mailing. However, based upon the record, the WCJ found that the Notice was mailed between the FCE on January 22, 2003, and Mihok's vocational interview on March 14, 2003.[6] Accordingly, the WCJ determined that Employer provided Claimant with the Notice in a timely manner, and

---

tial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.... If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is

selected by the insurer and who meets the minimum qualifications established by the department through regulation.
77 P.S. § 512(2).

**5.** The WCJ has complete authority over questions of credibility and evidentiary weight. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth.2000).

**6.** In her remand decision the WCJ actually listed the date of the FCE as January 23, 2003; this one-day difference constitutes a harmless typographical error.

she again modified Claimant's disability benefits.

Claimant again appealed, raising multiple issues, including the argument that his benefits should not have been modified as of January 22, 2003. Observing that Mihok testified the jobs in the labor market survey were available beginning on May 5, 2003, the Board amended the WCJ's decision to effect the modification on this later date. The Board affirmed the WCJ's decision in all other respects. Claimant now petitions for this Court's review.[7]

On appeal, Claimant presents three issues for our consideration. First, Claimant argues that the WCJ erred because the evidence does not support the conclusion that Employer "promptly" sent him the Notice of Ability to Return to Work. Second, Claimant argues that the WCJ erred in finding that work was open and available in Claimant's geographic area. Third, Claimant argues that the Board erred in refusing to award him litigation costs. We address these issues *seriatim*.

■ In his first issue, Claimant argues the evidence does not support the WCJ's finding that Employer sent the Notice between January 22, 2003, and March 14, 2003. Employer counters that evidence demonstrates that the Notice was sent to Claimant no later than March 14, 2003, when Claimant had his interview with Mihok, and that Claimant was in no way prejudiced by the timing of the Notice.

■ The Act requires an employer to inform a claimant when the employer learns that a claimant can return to work.

Specifically, Section 306(b)(3) directs the employer to give the claimant a written "Notice of Ability to Return to Work" in a "prompt" manner. This requirement is a threshold burden that an employer must meet in order to obtain a modification or suspension of benefits. *Secco, Inc. v. Workers' Compensation Appeal Board (Work)*, 886 A.2d 1160, 1162 (Pa.Cmwlth. 2005).

Borner testified that she sent Claimant the Notice of Ability to Return to Work, or Bureau Form LIBC–757, after the January 22, 2003, FCE or after she received Dr. Kann's January 30, 2003, report. In connection with that testimony, Employer offered into evidence a verification from Borner in which she attested that she sent the Notice "*shortly after* January 22, 2003." R.R. 24a (emphasis added).[8] Borner could not pinpoint the date of mailing because at the time the Bureau's Form LIBC–757 did not have a space thereon for recording the date of the Notice. The Bureau has since revised the form to provide a space for this purpose. *See* LIBC–757 REV 5–04; *see also* 34 Pa.Code § 121.3(a) (stating that "[f]orms must be in the format prescribed by the Bureau.")

Mihok testified that when she called Claimant to set up the initial vocational interview, she advised Claimant to seek legal counsel "to make sure that he knew what was going on under the Workers' Compensation Act 57." R.R. 240a. Indeed, Claimant expressed concern to her about how his return to the work force would affect his social security disability

**7.** This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

**8.** Claimant asserts that the verification form was not admitted into evidence. At the September 25, 2003, hearing, the verification was not admitted due to Claimant's objection. At the hearing on January 28, 2004, Employer's counsel questioned Borner about the verification form and reoffered it as an exhibit, without objection.

benefits. When Mihok met with Claimant on March 14, 2003, she explained the results of the FCE and the type of work Dr. Kann recommended. Mihok testified that Employer sent her Claimant's file sometime between March 3 and March 14, 2003; the Form LIBC–757 was also forwarded to her. Mihok's vocational packet, which she compiled after finishing the labor market survey, includes a notation regarding the Form LIBC–757. Mihok noted that after the FCE, Employer forwarded the Form LIBC–757 to Claimant "by certified and regular mail." R.R. 35a.[9]

The credited testimony of Borner and Mihok supports the WCJ's factual finding that Employer sent Claimant the Notice shortly after January 22, 2003, and no later than the vocational interview on March 14, 2003. The WCJ is the ultimate finder of fact, and the findings may not be disturbed unless they are not supported by substantial, competent evidence. *Westinghouse Electric Corp. v. Workers' Compensation Appeal Board (Weaver)*, 823 A.2d 209, 215 (Pa.Cmwlth.2003). As fact finder, the WCJ is permitted to draw reasonable inferences from the evidence. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921, 924 (1991). The Bureau's Form LIBC–757 did not record the date Employer sent it to Claimant, but the WCJ credited Borner's testimony that she sent it shortly after she received the FCE or Dr. Kann's report. The WCJ also credited Mihok's testimony that she received the Notice and discussed information contained therein at her March meeting with Claimant. Based on all this evidence, the WCJ made the reasonable inference that the Notice was sent shortly after the FCE and before the vocational interview.

Further, in performing a substantial evidence analysis, this Court must view the evidence in the light most favorable to the party that prevailed before the WCJ and must draw all reasonable inferences from the evidence in support of the WCJ's decision. *3D Trucking Company, Inc. v. Workers' Compensation Appeal Board (Fine and Anthony Holdings International)*, 921 A.2d 1281, 1288 (Pa.Cmwlth.2007). Setting aside the WCJ's finding that Employer provided the Notice to Claimant between January 22, 2003, and March 14, 2003, would require this Court to reweigh the evidence, which is impermissible.

Indeed, not even Claimant asserts that Employer did not send the Notice. Rather, Claimant attacks Employer's evidence as insufficient, as a matter of law, to prove that the Notice was provided in a prompt manner. In this argument, Claimant relies on *Melmark Home v. Workers' Compensation Appeal Board (Rosenberg)*, 946 A.2d 159 (Pa.Cmwlth.2008).

In *Melmark Home*, this Court held that determining what constitutes "prompt" written notice under Section 306(b)(3) "necessarily requires an examination of the facts and timeline in each case to determine if the claimant has been *prejudiced by the timing of the notice.*" *Id.* at 163 (emphasis added) (footnote omitted). We also explained that the claimant must be given the notice "*before* the employer attempts to modify benefits." *Id.* (emphasis in original). Claimant construes *Melmark Home* to mean that Employer was required to prove it sent him a Notice on a specific date. We disagree that either the Act or *Melmark Home* requires a finding that a Notice was sent on a specific date. It is required only that a Notice be sent

---

9. Claimant argues that the vocational packet was never admitted into evidence. However, Claimant has included it in the reproduced record and Claimant's counsel questioned Mihok using the vocational packet during her deposition.

before the employer modified benefits. Here, the WCJ so found.

Further, Claimant fails to acknowledge the critical aspect of *Melmark Home*'s holding, which is whether Claimant has been prejudiced by the timing of the Notice. Here, Claimant does not assert that he was prejudiced in any way.[10]

The WCJ found the Notice was sent to Claimant no later than his interview with Mihok in March. At the meeting, Mihok explained that Claimant needed to consult a lawyer and made sure he understood the consequences of the FCE. Claimant's benefits were not modified until May 5, 2003, the date specified in Mihok's report as when the jobs were available. Claimant had more than seven weeks, between the March 14, 2003, meeting and the May 5, 2003, modification date, to take action on his behalf. Given this timeline, Claimant cannot show any prejudice.

■ Next, Claimant argues that the WCJ's finding that work was available within Claimant's geographic area is not supported by substantial evidence. Claimant argues that Mihok did not specify Claimant's geographic area or whether persons in Claimant's community would travel to the jobs identified in the labor market survey. Employer points out that all of the jobs located by Mihok were either in or around the City of Pittsburgh, which is precisely where Claimant had worked for Employer.

When performing a labor market survey under Section 306(b)(2) of the Act, the employer must show that the jobs are in the "usual employment area" in which the claimant lives. 77 P.S. § 512(2). This Court has explained that jobs are avail-able to a claimant if they are "within the geographic area where others in the claimant's community would accept employment." *Litzinger v. Workers' Compensation Appeal Board (Builders Transport),* 731 A.2d 258, 261–262 (Pa.Cmwlth. 1999).

Mihok testified that she searched for jobs within a 25–mile radius of Claimant's home, which is the industry standard for a geographic area. Mihok looked for jobs within close proximity to Claimant's home and found "jobs that were located fairly close by." R.R. 272a. She also noted that Claimant worked in many schools throughout the Pittsburgh area and, therefore, had knowledge of this geographic area.

Mihok's testimony supports the WCJ's finding that the jobs in the labor market survey were located in Claimant's geographic area. Mihok used the industry standard of 25 miles in this case, and we reject Claimant's suggestion that Mihok was required to state that 25 miles is *Claimant's* usual geographic area or that others in his neighborhood travel 25 miles to work. No such magic words are required, and Claimant offers no authority for this view. At any rate, Mihok specifically testified that many of the jobs were fairly close to Claimant's home. Claimant's argument on this point lacks merit.[11]

■ Finally, Claimant asserts that the Board erred by not awarding him litigation costs. Employer's petition sought a modification as of January 22, 2003, which was the date of Claimant's FCE, and the WCJ granted the modification as of that date. This was technically incorrect. A modification becomes effective on the date of job

---

10. The lengthy and contentious litigation in this appeal has been focused on whether Claimant had earning power. Claimant's challenge to the timeliness of his Notice was, and is, an after-the-fact effort to win on a technicality.

11. This issue, like the first one, appears to be an attempt by Claimant to win on a technicality.

availability, as opposed to the date on which the claimant is found by a physician to be capable of working. Accordingly, the Board correctly set the effective date of Claimant's modification to May 5, 2003, the date jobs became available to him. Claimant asserts that he is entitled to litigation costs by reason of the Board's change in the effective date.

Section 440(a) of the Act, 77 P.S. § 996(a),[12] authorizes an award to a claimant for litigation costs where the claimant prevails in whole or in part. Section 440(a) provides, in relevant part, as follows:

> In any contested case where the insurer has contested liability in whole or in part, . . . the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings. . . .

77 P.S. § 996(a). In order to be awarded litigation costs, the claimant must prevail on an issue that was actually contested before the WCJ. *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1078 (Pa.Cmwlth.2009).

Claimant relies on *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25 (Pa. Cmwlth.2005). In that case, the employer sought a modification based on a job it offered the claimant in September 2002. The employer presented evidence to support job availability as of September 2002. The claimant contested the matter, presenting evidence that the job had not actually been offered until March 2003. The Claimant prevailed with this evidence and succeeded in delaying the modification date for six months. Because the claimant achieved a financial benefit for himself, he was held to be entitled to an award of litigation costs.

Employer urges that *Minicozzi* is distinguishable because the claimant there delayed the onset of the modification by the evidence he presented at the hearing before the WCJ. By contrast, here, it was not Claimant's evidence that changed the effective date of the modification. The Board simply corrected a technical error. We agree with Employer.

Employer's evidence, consisting of Mihok's labor market survey, showed that jobs were available to Claimant as of May 5, 2003. Claimant challenged Mihok's claims that the jobs in her survey were actually available to him, but he did not challenge the date of availability. Further, Employer presented no evidence that jobs were available on January 22, 2003, the date of the FCE. The change in the modification effective date from January 22, 2003, to May 5, 2003, was a technical correction made by the Board to conform to the evidence presented by Employer. The change was not the result of Claimant's effort to defend against a January effective date.

In any case, the change in the effective date of the modification had no immediate impact on Claimant. Because the WCJ had denied Employer's supersedeas request, Claimant continued to receive total disability benefits throughout the litigation well after the May 5, 2003, effective date of the modification. Claimant received full benefits until the WCJ issued her decision on April 25, 2006. In his reconsideration application, Claimant observed that the Board's change in the effective date of the modification means that his 500 weeks of

---

**12.** Section 440 was added by the Act of February 8, 1972, P.L. 25, *as amended.*

partial disability benefits will expire at a later date. This is true but irrelevant. The Board's correction of the WCJ's technical error had nothing to do with Claimant's costs of litigating before the WCJ. Claimant incurred those litigation expenses defending against any modification, on any date.

Accordingly, after reconsideration, we conclude that the Board did not err in refusing to award Claimant litigation costs for the change in the effective date of the modification.

For these reasons, we affirm the Board's order.

## ORDER

AND NOW, this 18th day of November, 2009, the order of the Workers' Compensation Appeal Board dated July 16, 2008, in the above captioned matter is hereby AFFIRMED.