# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Bucks, : 
                Petitioner : 
  : 
         v. :   No. 238 C.D. 2018
  :   Submitted: June 22, 2018
Workers' Compensation Appeal : 
Board (LePosa), : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER             FILED: September 20, 2018

County of Bucks (Employer) petitions for review of a January 30, 2018 Order of the Workers' Compensation Appeal Board (Board) reversing the Decision of the Workers' Compensation Judge (WCJ) granting Employer's Suspension Petition. Employer contends that the Board erred in concluding that Employer did not provide "prompt written notice" of ability to return to work (Notice) to Shirley LePosa (Claimant), as required as part of Employer's threshold burden of proof under Section 306(b)(3) of the Workers' Compensation Act (Act).[1] We agree. Employer

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 512(3). Section 306(b)(3) states:

sent Claimant the Notice and a letter offering her time-of-injury position to her, which Claimant does not contest had no expiration date.  More than a month later, after Claimant had time to consult with her attorney and obtain medical evidence contrary to that of Employer, Employer filed the Suspension Petition.  Under these circumstances, the timing of the Notice did not prejudice Claimant and, as such, Employer provided Claimant with "prompt written notice."  Therefore, we reverse the Board.

On January 12, 2014, Claimant, a certified nursing assistant (CNA) with Employer, was walking to her car after completing her shift when she slipped and fell on black ice.  As a result, she fractured her left foot and right thumb and injured her back.  Employer issued a Notice of Temporary Compensation Payable (NTCP) recognizing fractures of Claimant's "left foot/ankle & right thumb" and awarding Claimant workers' compensation benefits.  (Reproduced Record (R.R.) at 334a.)  After 90 days, the NTCP converted, by operation of law, to a Notice of Compensation Payable.

---

(3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide **prompt written notice**, on a form prescribed by the department [LIBC-757], to the claimant, which states all of the following:

> (i)   The nature of the employe's physical condition or change of condition.

> (ii)  That the employe has an obligation to look for available employment.

> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.

> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. § 512(3) (emphasis added).

2

Dr. Randall Culp conducted an independent medical examination (IME) of Claimant on August 11, 2015, after which he sent a report of the IME dated August 11, 2015, addressed to Med-Eval, and stamped as received by Employer on September 22, 2015. (*Id.* at 313a.) The Notice was issued, containing a "**Date of Notice**" of **August 31, 2015**, as well as Employer's date stamp of September 3, 2015. (*Id.* at 328a.) The Notice referenced Dr. Culp's IME showing Claimant could return to full-duty work.[2] (*Id.*)

By letter dated September 29, 2015 (Job Offer), sent via United Parcel Service (UPS), Employer informed Claimant that Dr. Culp had concluded that she could return to her time-of-injury position without any restrictions, and Employer was offering Claimant her time-of-injury position at the same rate of pay and hours. (*Id.* at 333a.) Specifically, the Job Offer stated as follows:

> Human Resources has received the enclosed report and physician's affidavit of recovery from your [IME] held 8/11/15 with Randall Culp, M.D. Dr. Culp recommends that you can return to work 8/11/15 with no restrictions relating to your work injury.
>
> This letter is to notify you that your pre-injury position of Nursing Assistant is available and to request that you return to work on Friday October 2, 2015 at 2:45 p.m. and report to your immediate supervisor. You will be working full duty on your normal shift of 2:45 p.m. to 10:45 p.m. and earning your current hourly rate of pay . . . . A Notice of

---

[2] The Notice included the following advisement:

You have an obligation to look for available employment.
Proof of available employment may jeopardize your right to receive ongoing benefits.
You have the right to consult with an attorney in order to obtain evidence to challenge the insurer's contributions.

(Reproduced Record (R.R.) at 328a.)

Ability to Return to Work (LIBC-757) **issued 8/31/15** is enclosed for your reference.

Should you have questions, I can be reached at . . . or email at . . . .

(*Id.* at 330a (emphasis added).)

On November 12, 2015, Employer filed the Suspension Petition, claiming that Dr. Culp had determined that Claimant could return to her time-of-injury position without restrictions and that Employer had requested that Claimant return to work as of October 2, 2015, but she had not done so. Employer also filed a Petition to Terminate Claimant's workers' compensation benefits based on her having fully recovered from her injury.

In support of the Petitions, Employer submitted the deposition testimony of Dr. Culp. He testified, in pertinent part, that he, a board-certified orthopedic surgeon who is separately certified in hand surgery, conducted an IME of Claimant on August 11, 2015. Dr. Culp noted that in May 2014, Claimant had a "right thumb MP fusion." (*Id.* at 226a; Finding of Fact (FOF) ¶ 2(a).) Dr. Culp found that the fusion was successful. He conducted a physical examination of Claimant. Based on his physical examination, including his observation that there was no atrophy in her right thumb, Dr. Culp concluded that, from a "functional standpoint," Claimant had fully recovered from her right thumb injury. (R.R. at 230a-31a; FOF ¶ 2(c).) As a result, Dr. Culp testified, Claimant could return to work without any restrictions.

Claimant testified before the WCJ, in pertinent part, that while she no longer had any complaints about her left foot or lower back, there was still pain in her right thumb and her use of it was restricted. Claimant last treated with her hand surgeon, Dr. Lawrence Weiss, in May or June 2015. The next physician she saw was Dr. Culp for the IME. Claimant did not believe that she was physically capable of

4

returning to her time-of-injury position, noting that part of her duties as a CNA include moving and manipulating patients. Since Claimant's injury, she had not returned to work, nor looked for work. Her only source of income is from workers' compensation benefits.

Claimant's Counsel asked Claimant if she "admit[ted] seeing" the Job Offer and the Notice, and she responded that she had. (R.R. at 82a.) Claimant agreed with Employer's Counsel that the Notice and Job Offer came together. (*Id.* at 88a.) Following her receipt of the Notice, Claimant testified, she contacted Employer, who told her that she would have to take a tuberculosis test before she could return to work, which Claimant completed. However, Claimant explained that she did not return to work because, given the injury to her thumb, she feared for her safety and that of her patients. On October 6, 2015, Claimant started treatment with Dr. Robert Mauthe. Claimant testified that her attorney had referred her to Dr. Mauthe, but that she had scheduled the appointment with Dr. Mauthe prior to receiving the Job Offer. She was now treating with Dr. Mauthe about every two months.

Claimant also submitted the deposition testimony of Dr. Mauthe. Board-certified in physical medicine and rehabilitation and electrodiagnostic medicine, Dr. Mauthe testified in relevant part that Claimant first started treating with him on October 6, 2015. He conducted an examination of Claimant just as "if this was an IME," which included physically examining her, along with reviewing Claimant's medical history and her current complaints, all of which led him to conclude that it was not safe for Claimant to return to work as a CNA. (R.R. at 113a-14a, 117a; FOF ¶ 4(d).) Since October 6, 2015, Dr. Mauthe testified, Claimant has continued to treat with him, seeing him about every three months, with the last time being the Friday before his deposition, on July 29, 2016. Over that time period, Dr. Mauthe

5

testified, the condition of Claimant's right thumb has not improved much and, in fact, she has reached maximum medical improvement. Currently, Dr. Mauthe stated, Claimant is taking anti-inflammatory medication, has her thumb in a splint, and is using a home paraffin wax treatment.

The WCJ granted the Suspension Petition, concluding that Claimant was able to return to her time-of-injury job as of October 2, 2015. (FOF ¶ 9.) The WCJ did so after crediting Dr. Culp's testimony and discrediting the testimony of Claimant and Dr. Mauthe. (*Id.* ¶¶ 7-8.) The WCJ found Claimant not credible given Dr. Culp's credited testimony noting the lack of atrophy in Claimant's right thumb, the minimal amount of treatment Claimant was receiving, and the lack of any treatment from May or June 2015 until October 6, 2015, when Claimant resumed treatment upon her attorney's referral and after the IME and Job Offer. (*Id.* ¶ 7.) The WCJ credited Dr. Culp over Dr. Mauthe because of the former's superior qualifications as an orthopedic surgeon who performs hand surgery. (*Id.* ¶ 8.) The WCJ found that "**Claimant received the September 29, 2015 job offer letter**." (*Id.* ¶ 5(d) (emphasis added).) The WCJ made **no finding** as to whether Claimant received the Notice **prior to** Employer's Job Offer.[3]

Claimant appealed to the Board, arguing that the WCJ erred in granting the Suspension Petition because it was based on a "defective job offer." (R.R. at 35a.) Claimant argued that there was no record evidence showing that she received the Notice **prior** to the Job Offer.

---

[3] The WCJ denied the Termination Petition because Drs. Culp and Mauthe agreed that Claimant had suffered a loss of "opposition" in her thumb, meaning she could not use her thumb to reach her ring and pinky fingers and, thus, Claimant had not reached full recovery. (FOF ¶¶ 2(b), 4(b), 10.) The Termination Petition is not at issue on appeal.

The Board agreed with Claimant and reversed the WCJ's Decision granting the Suspension Petition. (Board Opinion (Op.) at 6.) The Board noted that Employer was required, as part of its burden on the Suspension Petition, to prove that it provided Claimant with prompt written notice that it had received medical evidence showing that Claimant was able to return to work. (*Id.* at 4.) The Board found that Employer, while it issued the Notice on August 31, 2015, "**did not send [it] to Claimant until September 29, 2015**," when it was sent "**with** [the] job offer letter that was mailed to Claimant." (*Id.* at 4-5 (emphasis added).) The Job Offer, the Board also noted, stated that Claimant was to report to work by October 2, 2015. (*Id.* at 5.) Comparing these facts to those in *Secco, Inc. v. Workers' Compensation Appeal Board (Work)*, 886 A.2d 1160 (Pa. Cmwlth. 2015), the Board found that they were similar. (Board Op. at 5-6.) The Board concluded that it could not find that Employer's sending of the Notice "along with a job offer letter three days before the job offer was **valid** constitute[d] prompt written notice as contemplated under the Act." (*Id.* at 6 (emphasis added).) Therefore, the Board stated, since Employer did not meet its threshold burden of establishing prompt written notice, the WCJ should not have granted the Suspension Petition.[4]

On appeal,[5] Employer argues that the Board committed an error of law, reweighed the evidence, substituted its own findings for that of the WCJ, and did not review the evidence in the light most favorable to the Employer, going so far as to

---

[4] Employer filed an application for supersedeas pending review of the Board's Order, which this Court denied in an order filed June 15, 2018. *Cty. of Bucks v. Workers' Comp. Appeal Bd. (LePosa)* (Pa. Cmwlth., No. 238 C.D. 2018, filed June 15, 2018).

[5] Our standard of review "is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or [whether] an error of law was committed." *Melmark Home v. Workers' Comp. Appeal Bd. (Rosenberg)*, 946 A.2d 159, 161 n.3 (Pa. Cmwlth. 2008).

capriciously disregard apparently trustworthy evidence, in concluding that Employer did not provide Claimant with prompt written notice.[6] Employer argues that the evidence clearly showed that the Notice, as indicated by the "Date of Notice" on it, **was issued** to Claimant on August 31, 2015. The Board concluded, however, Employer contends, that Claimant did not receive the Notice until it was mailed with the Job Offer of September 29, 2015, when the Notice itself stated it "was issued on August 31, 2015." (Employer's Brief (Br.) at 18, (citing Notice, R.R. at 328a); Board Op. at 4-5.) The Board's conclusion was based "on its own inference and independent fact[-]finding instead of the substantial competent evidence of record." (Employer's Br. at 18.) In addition, even assuming that Claimant did not receive the Notice until it was mailed with the Job Offer, Employer argues that Claimant was not prejudiced. This is because the Notice was provided to Claimant at least three days before she was asked to return to work, there was no expiration date on the Job Offer, and, following her receipt of the Notice, Claimant discussed with Employer the need to take a tuberculosis test. Further, whether the Notice was first sent to Claimant on August 31, 2015, or with the Job Offer, Employer argues that in either case **it did not act** on the Notice until November 12, 2015, when it filed the Suspension Petition. By then, Employer asserts, Claimant had been represented by counsel since July 2015, had sought a contrary medical opinion, and the Job Offer, then more than a month old, by its own terms had not yet expired. As such, Employer contends, Claimant's receipt of the Notice did not prejudice her. In fact, Employer asserts, Claimant never testified that the timing of her receipt of the Notice impacted her in any way. Rather, Employer argues, Claimant testified that she did not return to work out of concern for the safety of herself and her patients. Given

---

[6] Although Employer has separated its arguments into three point headings, we have combined them for ease of discussion.

8

this, Employer contends, the WCJ did not find that the timing of Claimant's receipt of the Notice had "any bearing on the merits of the case." (Employer's Br. at 17.) Employer argues that the Board, in not considering whether Claimant suffered any prejudice, misapplied *Secco*. Based on the foregoing, Employer asserts that the Board's Order should be reversed and the WCJ's Decision affirmed or, in the alternative, the matter remanded to the WCJ for further findings on whether Employer provided Claimant with prompt written notice and whether Claimant suffered prejudice.

Claimant responds that the Board's determination finding that Claimant did not receive prompt written notice was based on undisputed facts. Claimant asserts that the undisputed facts showed that the Notice was sent **with** the Job Offer, and, under *Secco*, the Notice must be sent **before** the Job Offer. The WCJ, Claimant highlights, did not even address Employer's failure to send the Notice before it made an offer of employment to Claimant. Since Employer failed to give Claimant proper notice because it sent the Notice with the Job Offer, Employer did not provide prompt written notice to Claimant and, therefore, Claimant concludes, the Board's Order should be affirmed.

In order to be entitled to the suspension of a claimant's workers' compensation benefits, the employer must show that "there is a job available to the claimant at earnings equal to the claimant's pre-injury earnings and which the claimant is capable of performing despite a continuing medical disability." *Foyle v. Workmen's Comp. Appeal Bd. (Liquid Carbonic I/M Corp.)*, 635 A.2d 687, 689 (Pa. Cmwlth. 1993). As part of its "threshold burden" in seeking suspension based upon an offer of suitable, available work, the employer must show that it has complied with the provisions of Section 306(b)(3) of the Act. *Struthers Wells v. Workers' Comp.*

9

*Appeal Bd. (Skinner)*, 990 A.2d 176, 178 (Pa. Cmwlth. 2010). Section 306(b)(3) of the Act provides:

> (3) If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide **prompt written notice**, on a form prescribed by the department [LIBC-757], to the claimant, which states all of the following:
>
>> (i) The nature of the employe's physical condition or change of condition.
>>
>> (ii) That the employe has an obligation to look for available employment.
>>
>> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
>>
>> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. § 512(3) (emphasis added).

As Section 306(b)(3) sets forth, the Notice must be **prompt**. *Melmark Home v. Workers' Comp. Appeal Bd. (Rosenberg)*, 946 A.2d 159, 160 (Pa. Cmwlth. 2008). The Act, however, does not define what constitutes prompt written notice. *Id.* at 162. As such, in *Melmark Home*, we looked to the dictionary definition of "prompt," noting that it means "ready and quick to act **as occasion demands**." *Id.* (emphasis in original) (quoting Webster's Third New International Dictionary 1816 (2002)). Since the dictionary definition of prompt did "not involve a specific number of days," we looked to the purpose of the notice. *Id.* The purpose of the notice, we stated, "is to provide notice to a claimant that there is medical evidence that the claimant can perform some work; that benefits could be affected; and that the claimant has an obligation to look for work." *Id.* at 163. Given this purpose, we set

10

forth that prompt written notice requires an employer to "give a claimant notice of the medical evidence it has received a reasonable time **after** its receipt lest the report itself become stale" and "to give notice to the claimant a reasonable time **before** the employer acts upon the information." *Id.* (emphasis in original). On the latter point, we explained that the employer must give notice "reasonably in advance of the date on which [the] [e]mployer [seeks] to modify . . . benefits" so that the claimant has "time to search for employment or take other legal action." *Id.* at 164. Without such notice, "a modification petition would be a claimant's first notice that a doctor has found the claimant capable of work." *Id.* at 163.

Given this standard, we stated in *Melmark Home* that when the promptness of written notice is challenged, the facts and timeline of each case must be separately examined. *Id.* Thus, in *Melmark Home*, we rejected the notion that a bright-line rule should determine the promptness of the written notice required under Section 306(b)(3), stating that instead of the "number of days" being determinative, it is the "impact upon a claimant." *Id.* at 163-64. Indeed, "[t]he crucial factor is the impact [or prejudice] upon the claimant." *Kleinhagan v. Workers' Comp. Appeal Bd. (KNIF Flexpak Corp.)*, 993 A.2d 1269, 1273 (Pa. Cmwlth. 2010).

In applying the prompt written notice requirement, the Board relied exclusively on *Secco*. In *Secco*,[7] the employer, following a February 6, 2003 IME of the claimant, obtained a medical report which concluded that the claimant had fully recovered and could return to his pre-injury job as an electrician. 886 A.2d at 1161. The employer then prepared a letter offering the claimant a job as a journeyman electrician. *Id.* The employer mailed the job offer letter to the claimant

---

[7] In *Melmark Home*, we examined *Secco* and found that the rule announced in *Melmark Home* was "consistent with the analytical construct applied, but not expressly articulated, in *Secco*." *Melmark Home*, 946 A.2d at 163.

on Friday, February 14, 2003, informing the claimant that he had until February 19, 2003, to accept the offer. *Id.* at 1161-62. The claimant did not receive the certified letter until February 19, 2003. *Id.* at 1162. The employer also mailed the claimant a notice of ability to return to work on February 18, 2003, which included the IME report. *Id.* Based on these facts, we concluded that the claimant was not provided with prompt written notice. *Id.* at 1163. We explained that "given that the notice of ability to return to work was not sent until **after**" the job offer letter, and the job **expired** the same day the claimant received it, he "was not put on notice that there was a physical change in his condition which obligated [him] to look for available work." *Id.* (emphasis added).

*Secco* is distinguishable from the facts here. In this case, the Notice was not sent **after** the Job Offer but, either before or with the Job Offer.[8] Further, Claimant has not disputed Employer's claim that the Job Offer had "no expiration date." (Employer Br. at 9, 14-15.) Claimant apparently had time to contact Employer, schedule and undergo a tuberculosis test, and have Dr. Mauthe examine her on October 6, 2015. The Board concluded that the Notice was not prompt because it was sent along with the "job offer letter three days before the job offer was **valid**," also referencing that this was the day Claimant "was to report to the job." (Board

---

[8] Although the issue is moot in light of our holding, we note that the Board improperly engaged in additional fact-finding when it found that the Notice was first sent along with the Job Offer. *See Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992) ("the Board's function is primarily appellate in nature"); *see Bartholetti v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 927 A.2d 743, 747 (Pa. Cmwlth. 2007) (stating that the Board may not reinterpret the evidence). Claimant did not testify that she did not receive the Notice earlier, and the WCJ made no such finding. We note that the "Date of Notice" on the Notice indicates that it was issued on August 31, 2015. *See Bentley v. Workers' Comp. Appeal Bd. (Pittsburgh Bd. of Educ.)*, 987 A.2d 1223, 1227 (Pa. Cmwlth. 2009) (noting that the notice of ability to return to work had been revised to provide a space "for recording the date of the Notice").

Op. at 6 (emphasis added).) Thus, even if the Notice was sent with the Job Offer, because there is no evidence the job offer expired on October 2, 2015, *Secco* does not control here.

Indeed, we rejected the very argument Claimant makes here in *Miller v. Workers' Compensation Appeal Board (Johnson Matthey Holdings, Inc.)* (Pa. Cmwlth., No. 167 C.D. 2011, filed June 16, 2011), slip op. at 4.[9] There, the claimant argued that the first time he received the employer's notice of ability to return to work was with the employer's job offer. Citing *Secco*, the claimant argued that "this [wa]s not sufficient notice." *Id.* We disagreed, stating that, under *Secco*, notice is not prompt when the "notice . . . is sent **after the job offer** and both are received on the date that the job offer expires." *Id.* (emphasis added). Assuming, as the claimant argued, he received the notice **simultaneously** with the job offer, because "the job offer did not expire until nineteen days after the notices were received," we held that the employer provided the claimant with prompt notice. *Id.* Therefore, contrary to Claimant's contention, the fact that a notice of ability to work is sent **with** a job offer letter does not, as a matter of law, render the notice not prompt.

Having rejected the sole argument Claimant advances on appeal, which is strictly a legal argument, and, given the undisputed facts that Claimant received the Notice shortly after it was sent via UPS on September 29, 2015, and that the Job Offer did not contain an expiration date, we conclude that Claimant was provided with "prompt written notice." After Claimant received the Notice, she had a reasonable amount of time – more than a month – to consult with her attorney and undergo an examination by Dr. Mauthe so as to obtain evidence contrary to that of Employer's evidence before Employer filed the Suspension Petition. In other words,

---

[9] *Miller* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

the purpose of the Notice was served. *Melmark Home*, 946 A.2d at 163. Indeed, Claimant did not testify before the WCJ, nor has she argued on appeal, that the timing of her receipt of the Notice impacted her in any way. Rather, Claimant's position has been that Dr. Culp's conclusions were erroneous, and that, as Dr. Mauthe concluded, it would be unsafe for Claimant and her patients if she were to return to her time-of-injury position because of "her weak grip strength and loss of dexterity in [her] right thumb." (R.R. at 198a.) Under the "facts and timeline" of this case, the Notice was promptly provided to Claimant. *Melmark Home*, 946 A.2d at 163.

Accordingly, we reverse the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Bucks,                          :
                        Petitioner      :
                               :
            v.                      :    No. 238 C.D. 2018
                               :
Workers' Compensation Appeal              :
Board (LePosa),                           :
                    Respondent      :

# O R D E R

NOW, September 20, 2018, the Order of the Workers' Compensation Appeal Board, dated January 30, 2018, in the above-captioned matter is **REVERSED.**

 

 

_____
**RENÉE COHN JUBELIRER,** Judge